**Donald CROWDER, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

Civil Action Nos. 94–702, 94–1603, 94–1728, 94–2136 and 94–2269 (SS).

United States District Court,
District of Columbia.

March 18, 1997.

Thomas Louis Jones, David A. Konuch, Evans & Sill, Douglas Bruce McFadden, Athan T. Tsimpedes, McFadden, Shoreman & Tsimpedes, P.C., Washington, DC, for Donald Kirk Crowder, Benjamin W. Scott, Gerald Ashford, Maurice D. Davis, Clyde A. Gray, Jr., Sylvester Smith.

Sherman Bernard Robinson, Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC, for Sharon Pratt Kelly in No. 94–CV–702.

Sherman Bernard Robinson, Charles F.C. Ruff, Mark Justin Draycott, Jacques Philippe Lerner, Paul Klein, Office of Corporation Counsel, D.C., Washington, DC, for Walter B. Ridley, Michelle Elzie and Sgt. Bryant in No. 94–CV–702.

Charles F.C. Ruff, Mark Justin Draycott, Jacques Philippe Lerner, Paul Klein, Office of Corporation Counsel, D.C., Washington, DC, for Marion Barry, Joe Swollell, District of Columbia, Charles Kirkland, Paul Quander.

Charles F.C. Ruff, Mark Justin Draycott, Jacques Philippe Lerner, Paul Klein, Office of Corporation Counsel, D.C., Washington, DC, Margaret Moore and Michelle Elzie in No. 94–CV–702.

Benjamin W. Scott, Lorton, VA, Pro Se.

Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC, for Sharon Pratt Kelly and John S. Henderson in No. 94–CV–1603.

Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC, for Unknown Officers, Paul Krull.

Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC, for Bernard L. Braxton in No. 94–CV–2136.

Gerald Ashford, Lorton, VA, Pro Se.

Lawrence G. McPherson, Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC, for Sharon Pratt Kelly and John S. Henderson in No. 94–CV–1728.

Charles F.C. Ruff, Lawrence G. McPherson, Mark Justin Draycott, Jacques Philippe Lerner, Paul Klein, Office of Corporation Counsel, D.C., Washington, DC, for Margaret Moore in No. 94–CV–1728.

Thomas Louis Jones, David A. Konuch, Evans & Sill, Douglas Bruce McFadden, Athan T. Tsimpedes, McFadden, Shoreman & Tsimpedes, P.C., Washington, DC, for Roger Dawson.

Roger Dawson, Lorton, VA, Pro Se.

Maurice D. Davis, Lorton, VA, Pro Se.

Clyde A. Gray, Jr., Lorton, VA, Pro Se.

Sylvester Smith, Lorton, VA, Pro Se.

Mark Justin Draycott, Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC, for Sharon Pratt Kelly in No. 94–CV–2269.

Charles F.C. Ruff, Lawrence G. McPherson, Mark Justin Draycott, Jacques Philippe Lerner, Office of Corporation Counsel, D.C., Washington, DC, for Bernard Braxton in No. 94–CV–2269.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPORKIN, District Judge.

Plaintiffs,[1] inmates in the custody of the District of Columbia Department of Corrections, brought these consolidated actions pursuant to 42 U.S.C. § 1983, claiming that the defendant District of Columbia[2] has violated their constitutional and statutory[3] rights by failing to enforce nonsmoking policies in certain Department of Corrections facilities and by exposing them to environmental tobacco smoke (ETS), commonly known as secondhand smoke. On May 21, 1996, the Court entered a preliminary injunction, ordering the defendant to "immediately transfer the Plaintiffs ... into non-smoking quarters" and "enforce its non-smoking policy as set forth in Department of Corrections Operating Procedure (D.O.P.) 6060.1[4] and discipline prisoners and guards who violate the policy." *Crowder v. Kelly*, 928 F.Supp. 2, 7 (1996). The Court has now held a trial on whether to issue a permanent injunction and makes the following findings of fact and conclusions of law.

### Findings of Fact

Plaintiffs Smith, Scott and Dawson are inmates in the custody of the D.C. Department of Corrections. During the period of their incarceration, Plaintiffs have at various times been housed in areas where many other inmates smoke. Witnesses for the defendant testified that up to 95 percent of inmates smoke, as well as many correctional officers. Many prisoners are housed in dormitory-style units with dozens of inmates in one room. During any one night, nonsmokers in those units are exposed to the poisonous toxins from countless cigarettes. Even when kept in so-called non-smoking areas, Plaintiffs have been exposed to smoke from prisoners and correctional officers who vio-

1. Only three of the Plaintiffs—Sylvester Smith, Benjamin Scott and Roger Dawson—have pursued this action. The remaining Plaintiffs in these consolidated actions will be dismissed for failure to prosecute.

2. The individual defendants named in Plaintiffs' complaints were dismissed from this action at the close of the evidence and the District of Columbia was substituted as the sole remaining defendant.

3. The relevant provisions are D.C.Code § 6–911 *et seq.* which specifically restrict smoking in elevators, the public areas of most retail stores, public assembly or hearing rooms of most government-owned or -leased buildings, educational facilities, government vehicles, public areas of health care facilities, most restaurants, and most public and private workplaces. D.C.Code § 6–913.

4. In relevant part, Operating Procedure 6060.1 provides:

   Designated Smoking Areas
   1. Smoking shall only be permitted in designated smoking areas. These designated smoking areas must be separated by a physical barrier or a separate room to minimize smoke in nonsmoking areas. Ventilation shall be in compliance with the District laws and regulations that govern indoor ventilation.

late the rules, and from smoke that sifts in from smoking areas. Smoking is also prevalent in common areas, particularly in television rooms.

Plaintiff Scott is an insulin-dependent diabetic whose condition.is aggravated by ETS. Plaintiff Smith has suffered shortness of breath and headaches due to ETS. Smith has also suffered some chest pains. Plaintiff Dawson has been treated for thyroid cancer. That condition is now in remission, although Dawson still takes medications for the condition. Dawson also has a history of asthma.

The Court heard expert testimony from Doctor Albert Munzer, an expert on the effects of second-hand smoke and a former president of the American Lung Association. His uncontroverted testimony is fully credited. In 28 years of practice, Dr. Munzer has treated several hundred cases of lung cancer. In several of those cases, patients who have *never* smoked have nevertheless contracted lung cancer that can be traced to second-hand smoke. Dr. Munzer testified that "exposure to second-hand smoke can reasonably be expected to aggravate the condition[ of a] person with diabetes." Tr. 11/5/96 at 17. He further testified that ETS "absolutely" had an adverse effect on asthmatics, in that it exacerbates the condition. Finally, he testified that second-hand smoke would have an adverse effect on a *healthy person.* Specifically, he stated that second-hand smoke has been implicated in the development of lung cancer and deep respiratory infections in otherwise healthy people.

The testimony further showed that the adoption of Department of Corrections D.O.P. 6060.1, designed to establish certain smoke-free areas, did not materially improve conditions. Any advances toward significantly ameliorating the smoking problem within the Department of Corrections facilities occurred only after and because of this Court's

preliminary injunction issued on May 21, 1996. .

*Conclusions of Law*

The Supreme Court addressed Eighth Amendment claims of excessive ETS exposure in *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The Court held that upon an appropriate factual showing, a prisoner can make out an ETS exposure claim under the Eighth Amendment. The Court laid out a two-prong test that is to be applied to such claims.[5] The first prong is an objective factor: the prisoner must show that he himself is being exposed to unreasonably high levels of ETS. *Id.* at 35, 113 S.Ct. at 2481–82. The second prong is a subjective factor: the prison officials must have shown "deliberate indifference to serious medical needs of prisoners." *Id.*

In determining whether a prisoner has been exposed to unreasonably high levels of ETS,

a court [must] assess whether society considers the risk that the prisoner complains of to be so grave that it *violates contemporary standards of decency to expose anyone unwillingly to such a risk.* In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id.* (emphasis added).

In this case, Plaintiffs have shown, and the Court finds, that the involuntary exposure to significant amounts of ETS[6] is intolerable under contemporary societal standards. The defendant District of Columbia cannot hide from this fact. In enacting D.C.Code § 6–911, *et seq.,* the District of Columbia clearly recognized the extreme dangers of ETS. D.C.Code § 6–911(a) states that

The Council of the District of Columbia finds that the inhalation of concentrated

**5.** The Court in *Helling* rejected the government petitioners' claim that the Court could only look to the prisoner's current health conditions. The Court likened this to a prisoner having to wait for an attack of dysentery before complaining about unsafe drinking water. *Id.* at 33, 113 S.Ct. at 2480–81. Rather, a court must decide whether the prisoner has proved that prison officials have shown "deliberate indifference" to current

*or future* serious health problems. *Id.* at 34, 113 S.Ct. at 2481.

**6.** By "exposure to significant amounts of ETS," the Court means *any* direct exposure to tobacco smoke, whether from the same room or from an adjacent area.

smoke resulting from the smoking of tobacco in facilities in which the public congregates is a *clear danger to health.* *Id.* (emphasis added). In enforcing this policy, the Director of the Department of Administrative Services stated that

The District is deeply concerned about the health and welfare of it employees and the public whom they serve and is dedicated to providing a safe, healthy work environment. The health risks of smoking and exposure to smoke are clearly documented by reports of the U.S. Attorney General. The District accepts the current evidence that: *passive smoke is a cause of disease. including lung cancer. in healthy nonsmokers. and the simple separation of smokers and nonsmokers within the same air space may reduce. but does not eliminate the exposure of nonsmokers to environmental tobacco smoke.*

Memorandum from Ric Murphy, Director, Department of Administrative Services, to the Heads of all Departments and Agencies, January 31, 1992. (emphasis added). This admission by the District of Columbia is bolstered by the testimony at trial of Dr. Munzer who testified about the dire effects of second-hand smoke both for people with certain illnesses and for healthy people.

The District of Columbia has admitted that it is intolerable to expose it employees and members of the public to ETS. This is true, even though those citizens have some level of control over such exposure. "Free" citizens at least can choose where they work and whether they want to be in a second-hand smoke environment. Prisoners have no control over their whereabouts. Plaintiff Smith is serving a sentence of eight to 24 years. Even assuming he entered the institution a perfectly healthy man, the testimony has shown that exposure of up to 24 years to ETS will have a significant and intolerable effect on his health.

The District of Columbia in this action requests the Court to go along with its repu-

diation of its prior findings concerning the ill effects of second-hand smoke. This Court declines to accept the District's unwise and indeed unconscionable position. Intentional and involuntary exposure of any human being (whether incarcerated or not) to intolerable levels of second-hand smoke is tantamount to a physical assault on those exposed, and exceeds the standards of contemporary decency. This is particularly true where an individual has a serious underlying illness that is exacerbated by breathing in second-hand tobacco smoke. Regardless of the seriousness of a prisoner's criminal history, nothing he has done requires that he be compelled to live in an environment where his present and future health is significantly compromised. Accordingly, the Court finds that Plaintiffs have met their burden on the first prong of the *Helling* test.

Having met their burden on the "objective" prong of the *Helling* test, Plaintiffs must show that prison officials have shown "deliberate indifference" to the risks of ETS. The testimony of Plaintiffs and prison officials showed that while the Department of Corrections has established certain regulations purportedly intended to create so-called nonsmoking areas, they have been unwilling or unable to enforce them. Before this Court issued its preliminary injunction it is clear that prisoners *and guards* continued to smoke in nonsmoking areas at will.[7] This was inevitable. Despite the fact that nonsmoking areas were created, the Department of Corrections has implemented it policy in a flawed manner. The only real way the smoking policy will work is essentially to make it self-enforcing. This can be easily accomplished if the Department of Corrections simply stops placing "smokers" with non-smokers in sleeping and other discrete areas. If this is done there is no reason to expect violations of the non-smoking policy in these areas.

This Court's preliminary injunction has reduced the number of violations although the fact of the injunction has not been brought to

7. The defendant makes much of the testimony of Gray Robertson, an expert in air quality. Robertson conducted air quality tests at Lorton in an attempt to establish that there is no significant ETS in nonsmoking areas. This testimony is of little practical help to the Court in reaching its decision. The air quality tests were conducted *after* the Court issued its preliminary injunction. If anything, the tests show that the Court's injunction may have had its desired effect.

the attention of all prison officials. Indeed, one prison official testified at trial he had not even heard about the injunction.

The evidence demonstrated that prior to this Court's preliminary injunction there existed a "deliberate indifference" to the concerns of nonsmoking inmates despite the District's smoking policy. Without a continuation of the injunction, this "indifference" will continue. With such a large smoking population, and without a court order, there are few incentives for prison officials to crack down on the smokers and risk incurring their wrath over something deemed by some to be benign. This is particularly so where a large number of the prison guards are also smokers. As noted, to really deal with this problem, prison officials will have to devise a way to place non-smokers apart from smokers in sleeping and other discrete areas. Where smoking and non-smoking prisoners are kept in the same quarters, it is very difficult to enforce a no smoking policy. This is particularly so where the testimony shows that possibly up to 85–95% of the inmate population are smokers.

The Plaintiffs have met their burden under *Helling* and the Court will enter a permanent injunction in their favor. Pursuant to the recently enacted Prisoner Litigation Reform Act, "[p]rospective relief . . . with respect to prison conditions shall extend no further than necessary to correct the violation of the federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). The relief granted must be "narrowly drawn, extend[ ] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." *Id.*

This is not a class action, and therefore the injunction will be narrow in scope, and made applicable only to the designated Plaintiffs. Specifically, the District will be required to take all steps necessary to assure that the named Plaintiffs will be assigned sleeping quarters with other non-smokers and to otherwise enforce its non-smoking policy in those areas where the Plaintiffs are compelled to be. Thus where it is required for them to use common areas with smoking prisoners, the institutions' nonsmoking policy must be enforced. The Court finds that these are the narrowest and least intrusive means to vindicate Plaintiffs' rights under the Eighth Amendment and under local law pursuant to this Court's supplemental jurisdiction.

*Conclusion*

The District's stance in this proceeding is somewhat mystifying. It has proceeded on a highly technical basis. Indeed, at one point, it opposed Plaintiff's introduction of the District's "Smoke–Free" environment policy on the basis that it was a "hearsay" document. Despite its own public pronouncement, the District has even challenged whether secondhand smoke poses health hazards. While the District states it intends to carry out its smoke-free environment policy, it will do so only on a voluntary basis and does not want to be held accountable where it fails to do so.

The District certainly has the responsibility to protect society from criminal offenders, some of whom have committed heinous acts against its citizens. When such acts occur, society must rid itself of those menacing its citizens. They must be confined so that they can no longer be a threat to society. In doing so, however, society may not be indifferent to the basic necessities of existence. This means no matter how loathsome a criminal or his acts may be, punishment may not exceed the judgment ordered by the sentencing authority. This means society may not usurp the powers of the court and order a punishment that is more severe than the law dictates. Subjecting prisoners to extreme health hazards goes beyond the power conferred on those charged with administering our prison system. Everyday, society is becoming increasingly aware of the health hazards of cigarette smoke. To its credit the District has instituted widespread restrictions on smoking. See D.C.Code § 6–911 *et seq.* Inexplicably, the District has taken a somewhat different tact when it comes to the health of its prison population. Having recognized the dangers of ETS, the District has not adequately explained why it is all right to expose its prison population to such hazards.

It is not enough to simply announce a policy. Policies must be adequately enforced.

While prisoners such as Plaintiffs with pre-existing medical conditions have the right not to have those conditions exacerbated by exposure to ETS, the problem is broader than just prisoners with health conditions. Where an otherwise healthy prisoner faces a lengthy period of incarceration and where it is documented that the vast majority of inmates and prison guards smoke, there is little question that the non-smoking prisoner's health will soon suffer. The Department of Corrections cannot remain indifferent to this problem. It needs to take steps to protect those who do not want to be exposed to such risks.

In its discretion, this Court's decision will be limited to prospective relief. Any claims for damages must first be pursued in the administrative and court systems of the District of Columbia which are fully capable of handling such claims.

An appropriate order, specifying the precise terms of the permanent injunction, is attached hereto.

### ORDER

Pursuant to the foregoing findings of fact and conclusions of law, the Court finds in favor of Plaintiffs Sylvester Smith, Benjamin Scott and Roger Dawson and grants the following injunctive relief.

It is hereby **ORDERED** that Defendant, its officers, agents, servants and employees and all persons in active concert or participation with them are hereby **ENJOINED** to:

1. immediately transfer Plaintiffs Smith, Scott and Dawson into non-smoking quarters;

2. with respect to the named Plaintiffs, enforce the non-smoking policy as set forth in D.O.P. 6060.1, and discipline prisoners and correctional officers who violate the policy;

3. ensure that for the remainder of their incarceration Plaintiffs Smith, Scott and Dawson shall have access to sleeping quarters and *all* types of common areas on a smoke-free basis, including, *but not limited to,* dining areas, bathroom areas, libraries, classrooms, caseworker offices, television and recreation rooms, and indoor exercise areas. Where smokers are permitted in such common areas, a non-smoking policy must be *strictly* enforced.

4. The level of security at which Smith, Scott and Dawson are held shall not be increased or decreased for the purpose of complying with this Order.

5. There shall be no discrimination in treatment against Smith, Scott or Dawson as a result of this litigation, this Order or their efforts to enforce this Order. and it is further

**ORDERED** that this Court shall retain jurisdiction to enforce the terms of this Order and to render such other and further relief as it may deem appropriate; and it is further

**ORDERED** that Consolidated Civil Action Nos. 94–702, 94–1603, 94–1728, 94–2136, and 94–2269 be **DISMISSED.**