Keith SIMMONS, Plaintiff,

v.

Asst. Supt. SAGER, et als., Defendants.

**Civil Action No. 95–1170–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

June 30, 1997.

Keith Simmons, Norfolk, VA, pro se.

Jill Theresa Bowers, Office of Atty. Gen., Richmond, VA, for defendants.

### AMENDED MEMORANDUM OPINION

TURK, District Judge.

KEITH SIMMONS, a Virginia inmate proceeding *pro se*, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges that the defendants, officials at White Post Work Center ("White Post"), refused to provide him non-smoking accommodations, in deliberate indifference to his health. He sues Mr. R. Sager, the Assistant Supervisor of White Post, seeking monetary relief.[1] Pending before the court is defendant's supplemental motion for summary judgment, to which plaintiff has responded, making the matter ripe for the court's consideration. After review of the record, it is the opinion of the court that the motion for summary judgment must be granted.

### I.

In his complaint and subsequent pleadings, Plaintiff Simmons has alleged the following sequence of events on which his claims are based. He was assigned to White Post in the summer of 1995. All of the inmate dorms at White Post include a designated smoking area in one end where the inmates recreate and watch television. The ventilation system in the dorm fails to prevent some smoke from filtering throughout the dorm into non-smoking areas. Simmons alleges that he repeatedly asked Supervisor Sager to work out non-smoking living quarters for him, either at White Post or at another work center. Simmons alleges that Sager refused both of these requests even though he was aware that Simmons had health problems. Sim-

---

1. Inasmuch as plaintiff was transferred to another institution after the filing of his complaint, the court has already dismissed his claims for injunctive relief as moot. Plaintiff has now been released from custody.

mons submits medical records for a child named Kenneth Poole whom the court assumes to be plaintiff. The records appear to indicate that the child suffered bronchial pneumonia and tonsillitis at approximately age four, an upper respiratory infection at age 6, and a hernia at age 12. Simmons also alleges that he asked Sager to turn on ventilation fans or to open outside doors in the sleeping area of the dorm in order to give non-smokers some smoke-free air, but Sager refused, stating that opening the doors would create a security problem.

Sager presents evidence that the ventilation system in the White Post dorms meets all standards for such systems within the Virginia Department of Corrections (VDOC) and that he does not make any independent decisions about the type of ventilation system installed in the dorms. Sager also presents evidence that during his stay at White Post, Simmons never reported to any medical officer that exposure to cigarette smoke was aggravating any existing medical problem. Finally, Sager states that he does not have sole authority to transfer an inmate to another facility. He states that he advised Simmons to request a transfer from the Central Classification Board (CCB). In April 1996, Simmons was transferred to Patrick Henry Correctional Unit # 28 which has accommodations for non-smokers.

Sager also explains in some detail the smoking regulations in place at White Post. Inmates may smoke outside the dormitory while at recreation or work. Smoking is prohibited in the visiting area and in the sleeping area of the dorm; offenders receive a disciplinary charge. Inmates may smoke in the television/recreation room at the other end of the dorm from the sleeping area. Non-smoking inmates are not required to stay in smoking areas at any time. On January 10, 1997, Simmons was moved to a bed assignment in the end of the sleeping area farthest away from the smoking area.

## II.

■ The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 345, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Ordinarily, to state an Eighth Amendment claim concerning prison conditions, plaintiff must allege facts sufficient to show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. *Strickler v. Waters*, 989 F.2d 1375, 1380–1381 (4th Cir.), *cert. denied*, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

■ However, the Supreme Court of the United States has held that a plaintiff "states a cause of action under the Eighth Amendment by alleging that [the defendants] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke or ETS] that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Determining whether ETS conditions violate the Eighth Amendment "requires more than a scientific and statistical inquiring into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Id.* at 36, 113 S.Ct. at 2482. A plaintiff must demonstrate two objective elements: (1) he is being exposed to unreasonably high levels of ETS, and (2) today's society will not tolerate his exposure to this risk. *Id.* at 35, 113 S.Ct. at 2481. Furthermore, the plaintiff must prove a subjective element: that the defendants are deliberately indifferent to his exposure to this risk. *Id.*

McKinney, the plaintiff in the *Helling* case, had complained that his future health was at great risk because he was housed in a cell with an inmate who smoked five packs of cigarettes per day. *Id.* at 28, 113 S.Ct. at 2478. The Court found that his allegations about this situation stated a cause of action under the Eighth Amendment. However, the Court noted that McKinney's situation at the time of the *Helling* decision might not state a claim since he no longer shared a cell with a heavy smoker. *Id.* at 35–36, 113 S.Ct. at 2481–82. In addition, the prison system had adopted a formal smoking policy, restricting smoking in prison common areas such as recreation and food preparation areas and giving wardens the authority to designate non-smoking housing areas. *Id.* Based on these changes, the Court recognized that McKinney might be unable "to prove that he will be exposed to unreasonable risk with respect to his future health." *Id.* at 36, 113 S.Ct. at 2482.

■ The court finds that Simmons has failed to establish that his Eighth Amendment rights were violated by exposure to

ETS at White Post. First, he has not alleged any specific medical symptoms which he suffered as a result of ETS exposure. Thus, he has failed to show any actual injury resulting from the challenged conditions. *Strickler,* 989 F.2d at 1380–81. Second, he has not demonstrated that his childhood health problems have continued into adulthood or that they are in any way aggravated by ETS exposure. He does not dispute defendant's evidence that he made no ETS-related medical complaints during his stay at White Post.

Third, as Simmons has not demonstrated any specific health problems which would be aggravated by exposure even to small amounts of ETS, the court cannot find that the accommodations at White Post exposed him to unreasonable levels of ETS which society would not tolerate. In many places in society, non-smokers must deal unwillingly with ETS on a daily basis—smoke on others' clothes or on the motel room drapes, some smoke seeping into the ventilation system of the apartment complex, clouds of smoke from the small hord of smokers congregated outside every exit from the non-smoking office building, or the defiant smoker in the non-smoking section of the restaurant or bus. These ETS occurrences in the free world are widely tolerated. As society has not yet demanded that all public areas be kept free of ETS, the court cannot find that society would require prisons to do so. *Id.* at 35, 113 S.Ct. at 2481.

Finally, Simmons has not demonstrated that Sager was deliberately indifferent to Simmons' request for less exposure to ETS. Simmons' bed was moved as far as possible away from the smoking area. The smoking policy kept smoke as isolated to specific areas as possible, and the ventilation system was kept up to standard. Security concerns are a legitimate reason to deny Simmons' request about opening dormitory doors. Even refusing to use fans as Simmons requested to bring fresh air to the sleeping area is not per se unreasonable, given the prison policy to keep smoke out of this area and given the other possible considerations

required before using the fans, such as the effect on other inmates. Simmons does not deny that the inmate must initiate the transfer process with authorities other than Sager. He certainly does not allege that Sager interfered with Simmons' request for transfer once it was filed. Based on the undisputed facts, the court finds that Sager acted reasonably in limiting Simmons' exposure to ETS while he was at White Post. Thus, Sager cannot be found deliberately indifferent or liable for violating Simmons' Eighth Amendment rights. *Helling* and *Farmer v. Brennon,* 511 U.S. 825, 844 (1994) ("[p]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk even if the harm ultimately was not averted.") Defendant's motion for summary judgment must, therefore, be granted. An appropriate order shall be entered this day.

Simmons mentions other problems that he has had since his transfer away from White Post. He apparently feels that he was wrongfully transferred to facilities with higher security than White Post which pressured him into disciplinary infractions, cost him good time credits and parole consideration. However, as Simmons never amended this action to raise these claims or to allege specific facts about individuals responsible for these alleged violations of his rights, only the ETS claims are before the court in this action.