Benjamin W. SCOTT, Roger Dawson,
& Sylvester Smith, Appellees,

v.

DISTRICT OF COLUMBIA, Appellant.

Nos. 97–7064, 97–7066 and 97–7067.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 29, 1998.

Decided April 3, 1998

Kathleen S. Beecher, Washington, DC, argued the cause for appellant. With her on the briefs were John M. Ferren, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Ronald S. Flagg, Washington, DC.

Douglas B. McFadden, Washington, DC, argued the cause for appellees. With him on the brief was Athan T. Tsimpedes, Washington, DC.

Before: GINSBURG, HENDERSON, and RANDOLPH, Circuit Judges.

RANDOLPH, Circuit Judge:

When these lawsuits began, Scott, Dawson and Smith were prisoners of the District of Columbia in the Lorton Correctional Complex in Virginia. Second-hand tobacco smoke at Lorton, they alleged in separate complaints, violated the cruel and unusual punishments clause of the Eighth Amendment to the Constitution. The district court agreed and issued a permanent injunction ordering the District to provide each of them with a smoke-free environment. *See Crowder v. District of Columbia,* 959 F.Supp. 6 (D.D.C.1997). The District's appeal is mainly on the ground that the court misapplied the standards articulated in *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

Events occurring after the district court's final order present a problem of mootness. None of the three plaintiffs is still jailed at Lorton. Scott completed his sentence and was released more than a year ago. Dawson and Smith are now serving time at the Northeast Ohio Correctional Center, a private facility operated for the District. They were transferred to Ohio in September 1997 pursuant to § 11201(c) of the National Capital Revitalization and Self–Government Improvement Act of 1997, Pub.L. No. 105–33, 111 Stat. 712, 734.

■ Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison.[1] It does not matter that Smith and Dawson

are still being held under the authority of the District of Columbia. The cases do not distinguish between intra- and inter-jurisdiction transfers of inmates. *See Cameron,* 983 F.2d at 257; *Stewart,* 5 F.3d at 1037–38; *Martin,* 780 F.2d at 1337; *see also Dilley v. Gunn,* 64 F.3d 1365, 1368 (9th Cir.1995).

■ As to Scott, his release from confinement surely moots his case. *See Weinstein v. Bradford,* 423 U.S. 147, 147–48, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *Dorman,* 955 F.2d at 58; *Martin–Trigona v. Smith,* 712 F.2d 1421, 1427 (D.C.Cir.1983). Neither he nor the other two plaintiffs are before us asking for damages. None of the three complaints has blossomed into a class action. Each plaintiff's request for injunctive relief stemmed from conditions alleged to exist at Lorton.

■ Smith and Dawson are still in prison, but they are now in Ohio. What is left of their complaints about second-hand tobacco smoke at Lorton? The District answered at oral argument that the cases are saved from mootness by the "capable-of-repetition-yet-evading-review" doctrine. *See Christian Knights of the Ku Klux Klan v. District of Columbia,* 972 F.2d 365, 369–71 (D.C.Cir. 1992). This is plausible but not particularly persuasive; nothing in the record tells us the likelihood of Smith or Dawson winding up at Lorton again.[2] A more telling point, endorsed by all parties, stems from the breadth of the injunction. It seems to apply no matter where Smith and Dawson are incarcerated, so long as they are under the District's jurisdiction. The District says it treated the injunction this way when it transferred Smith and Dawson to the Ohio facility. On

1. *See Cameron v. Thornburgh,* 983 F.2d 253, 257 (D.C.Cir.1993); *Dorman v. Thornburgh,* 955 F.2d 57, 58 (D.C.Cir.1992); *see also Green v. Branson,* 108 F.3d 1296, 1299–1300 (10th Cir.1997); *Stewart v. McGinnis,* 5 F.3d 1031, 1037–38 (7th Cir. 1993); *Johnson v. Moore,* 948 F.2d 517, 519–22 (9th Cir.1991); *Magee v. Waters,* 810 F.2d 451, 452 (4th Cir.1987); *Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir.1985); *McKinnon v. Talladega County,* 745 F.2d 1360, 1363 (11th Cir.1984).

2. The Supreme Court must have pondered the same mootness issue in *Helling v. McKinney.* At oral argument, counsel disclosed that prisoner McKinney, whose complaint dealt with his expo-

sure to second-hand smoke at Nevada's Carson City State Prison, had been transferred to Nevada's Ely State Prison. When one Justice asked why this did not moot the case, counsel replied that McKinney could be transferred back to Carson City. *See Helling v. McKinney,* 61 U.S.L.W. 3518, 3518–19, 1993 WL 751838 (U.S. Jan. 13, 1993). The Supreme Court's opinion said nothing on the subject of mootness. The fact that McKinney sought not only an injunction but damages (*see* 509 U.S. at 28, 113 S.Ct. at 2478) cannot explain the Court's silence. Most of the opinion's legal analysis concerned injunctive relief. *See id.* at 35–36, 113 S.Ct. at 2481–82.

this view, the controversy remains alive so long as these two prisoners are held pursuant to the District's authority, no matter where they are held.[3] This interpretation of the injunction saves the cases from mootness. But it also exposes the injunction's defects.

■ The extraordinary scope of the decree, a decree following these prisoners wherever the District incarcerates them, misapprehends the demands of the Eighth Amendment. The key decision is the Supreme Court's in *Helling v. McKinney.* A prisoner "states a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to levels of [tobacco smoke] that pose an unreasonable risk of serious damage to his future health." 509 U.S. at 35, 113 S.Ct. at 2481. The Court referred to the first element—exposure to unreasonably high levels of secondhand smoke—as "objective." *Id.* at 35, 36, 113 S.Ct. at 2481, 2482. To prove this element, the prisoner must show (1) that "he himself is being exposed to unreasonably high levels of" second-hand smoke; and (2) that the exposure creates a risk of harm "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk," *id.* at 36, 113 S.Ct. at 2482; *see also Oliver v. Deen,* 77 F.3d 156, 159–60 (7th Cir.1996); *Simmons v. Sager,* 964 F.Supp. 210, 212 (W.D.Va.1997). The Court referred to the second element— deliberate indifference—as "subjective." *Helling,* 509 U.S. at 35, 36, 113 S.Ct. at 2481, 2482.

The district court quoted from *Helling* but then reformulated the standard into what it called a conclusion of law: "involuntary exposure to significant amounts of [second-hand smoke] is intolerable under contemporary societal standards." *Crowder,* 959 F.Supp. at 8. This raises several questions, not the least of which is how much is a "significant" amount? A footnote to the opinion explained: "exposure to significant amounts" means "*any* direct exposure to tobacco smoke, whether from the same room or from an adjacent area." *Id.* at 8 n. 6. If "any"

exposure is intolerable, what does one do with *Helling*'s requirement that the inmate must prove an "unreasonably high" level of smoke at the prison? And what of *Helling*'s requirement that exposure to second-hand smoke must present a "grave" risk to the prisoner's health? Are we to believe that any exposure to tobacco smoke, no matter what the level, no matter what the length of time, poses a grave health risk? The district court cited no scientific studies to support that proposition and the plaintiffs offered none. Given the law imbedded in the district court's formulation—involuntary exposure to any level of second-hand tobacco smoke in prison violates the Eighth Amendment—it is easy to see why the court's injunction would follow these prisoners wherever the District incarcerated them. It is also easy to see why the district court was mistaken.

*Helling* did not read the Eighth Amendment as mandating smoke-free prisons. It is impossible to read any such *per se* rule into *Helling*'s "objective" element. It is also impossible to find that these plaintiffs presented enough evidence to satisfy *Helling*'s standard, correctly understood. They did put on some evidence of their involuntary exposure to some second-hand smoke at Lorton. But the evidence consisted merely of anecdotal accounts, such as testimony that there "was smoking being done in the sleeping areas" and that Lorton's Medium Security Facility was like "a nightclub." J.A. 207, 251. Missing entirely from the plaintiffs' affirmative case was any objective evidence of the level of second-hand smoke. There was no "scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that ... injury to health will actually be caused by exposure." *Helling,* 509 U.S. at 36, 113 S.Ct. at 2482. The only quantitative evidence consisted of the District's measurements of the air quality in Lorton's dormitories and common areas (including the areas of which the plaintiffs complained). The measurements revealed that the amounts of second-hand smoke were below levels considered acceptable under the standards of both

---

3. The court's order commands the District to provide Smith and Dawson with smoke-free quarters and common areas "for the remainder

of their incarceration." *Crowder,* 959 F.Supp. at 11.

the Occupational Safety and Health Administration and the American Society of Heating, Refrigerating, and Air Conditioning Engineers, standards which apply to buildings in the District and Virginia.[4] In short, Dawson and Smith failed to prove that even while they were at Lorton, they were exposed to such an unreasonable level of tobacco smoke that it posed a serious risk to their future health. *See, e.g., Deen,* 77 F.3d at 160; *Davidson v. Coughlin,* 920 F.Supp. 305, 308–09 (N.D.N.Y.1996); *Pryor–El v. Kelly,* 892 F.Supp. 261, 267 (D.D.C.1995); *Jackson v. Berge,* 864 F.Supp. 873, 882 (E.D.Wis.1994); *see also McNeil v. Lane,* 16 F.3d 123, 125 (7th Cir.1993). Needless to say, there is no evidence regarding their present conditions of confinement in Ohio, or what those conditions would be absent the injunction. Yet before an injunction may issue the inmate must prove that he currently *"is being* exposed to unreasonably high levels" of smoke. *Helling,* 509 U.S. at 35, 113 S.Ct. at 2481 (our italics).

Both plaintiffs say they are suffering "from a physical ailment that is aggravated by second-hand cigarette smoke." Brief of Appellees at 4. Their expert witness, Dr. Albert Munzer, testified that exposure to second-hand smoke would aggravate the conditions of persons suffering from the plaintiffs' alleged health problems and would have an adverse effect even on otherwise-healthy persons. The plaintiffs believe that, in light of this evidence, their involuntary exposure to tobacco smoke at almost any level was unreasonable.

The district court apparently agreed with this line of reasoning. *See Crowder,* 959 F.Supp. at 8–9. We do not. Smith's evidence consisted of his statements that exposure to smoke caused him headaches, chest pains, and "a lot of stress." J.A. 210. He identified no specific medical condition, and provided no records documenting any ail-

ment. Dawson, on the other hand, said he had been treated for thyroid cancer and had a history of asthma. The District contested the asthma claim, but we will assume it to be true. Even so, Dawson failed to demonstrate a causal relationship between his conditions and an increased risk of harm to him from second-hand smoke. Dr. Munzer's testimony established no such nexus. He never examined Dawson (or Smith). He had no knowledge of Dawson's medical condition or of the actual levels of smoke to which Dawson was exposed. Yet Dr. Munzer testified that the health effects of exposure to second-hand smoke "var[y] tremendously with the individual," and "in order to assess the actual risk to the plaintiffs in this case … to a reasonable degree of scientific or medical certainty," he "would certainly have to know … what the levels of exposure were" and would have to be familiar with the plaintiffs' medical histories. J.A. 377, 387–88.

■ *Helling* also required Dawson and Smith to prove "deliberate indifference" on the part of prison authorities, 509 U.S. at 35–36, 113 S.Ct. at 2481–82, that is, to prove that the authorities were "knowingly and unreasonably disregarding an objectively intolerable risk of harm" to the plaintiffs' safety. *Farmer v. Brennan,* 511 U.S. 825, 846, 114 S.Ct. 1970, 1983, 128 L.Ed.2d 811 (1994). The officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and … must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979. On this aspect of the case, the district court concluded that the plaintiffs had carried their burden by showing that the Lorton officials were "unable or unwilling" to enforce prison regulations banning smoking in certain areas. *Crowder,* 959 F.Supp. at 9. This cannot be right. The court heard no evidence demonstrating the existence of any substantial risk of harm.

4. The District's air quality measurements were taken after the district court had issued a preliminary injunction ordering the District to enforce Lorton's policy regarding nonsmoking areas. For this reason the court found the measurements "of little practical help," *Crowder,* 959 F.Supp. at 9 n. 7. But it was never proven that the conditions at Lorton were worse before the preliminary injunction than after. Dawson and

Smith in fact claim that prison officials ignored the preliminary injunction. *See* Brief of Appellees at 6, 7. Furthermore, even the earliest measurements were taken weeks after the preliminary injunction had expired. By that time, any improvements in Lorton's air quality attributable to the preliminary injunction might well have dissipated.

Yet there must be an "objectively intolerable risk" in order for there to be a "knowing and unreasonable" disregard of it. It makes no sense to charge someone with improperly ignoring a danger that never existed.

Besides, it is hard to see how imperfect enforcement of a nonsmoking policy can, alone, satisfy *Helling*'s subjective element. That the District even has such a policy militates against a finding of deliberate indifference. The Supreme Court said as much in *Helling*, 509 U.S. at 36, 113 S.Ct. at 2482. *See also Davidson*, 920 F.Supp. at 309; *Pryor–El*, 892 F.Supp. at 267. Here prison officials testified to their good-faith attempts to enforce the prison's nonsmoking policy to the best of their abilities. A fire protection specialist found the prison in substantial compliance with nonsmoking rules during unannounced inspections. Guards and prisoners caught ignoring or violating the nonsmoking policy were disciplined. Steps were taken to improve ventilation in problem areas about which the prisoners complained. Grievances and requests from inmates and prison physicians regarding exposure to tobacco smoke were answered and acted upon. And again, actual measurements of the amount of smoke in the prison revealed that prison officials were doing a good job keeping the environment reasonably smoke-free. Deliberate indifference is characterized by "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Those words do not fit the actions of the prison officials here.

*Reversed.*