**Robert FRANKLIN, et al., Appellees,**

v.

**DISTRICT OF COLUMBIA, Appellant.**

No. 97–7162.

United States Court of Appeals, District of Columbia Circuit.

March 22, 1999.

Before EDWARDS, Chief Judge; WALD, SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL and GARLAND, Circuit Judges.

### *ORDER*

PER CURIAM.

Appellees' Petition For Rehearing *En Banc* and the response thereto have been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular active service did not vote in favor of the petition. Upon consideration of the foregoing, it is

ORDERED that the petition be denied.

Circuit Judges WALD and TATEL would grant the suggestion. Their statement is attached.

Separate statement filed by WALD and TATEL, Circuit Judges, dissenting from the denial of rehearing en banc.

WALD and TATEL, Circuit Judges, dissenting from the denial of rehearing en banc:

In reaching its conclusion that "[t]here was *no proof* that senior policymakers or other District officials ... willfully violated their duty of care," *Franklin v. District of Columbia,* 163 F.3d 625, 636 (D.C.Cir.1998) (emphasis added)—the subjective element of the Eighth Amendment deliberate indifference inquiry—the panel opinion mentioned not one of the district judge's exhaustive factual findings. The following are only a fraction of these findings, quoted verbatim from the district judge's opinion:

> There are inadequate numbers of Spanish speaking staff, and those who do speak Spanish are not deployed to insure that there is bilingual staff coverage at critical sites. As a result, prisoners who cannot speak English cannot obtain care because they cannot communicate with a provider. *See, e.g.,* Fowlkes Test. at 9; TR at 300–01 (cross-examination of Dr. Fowlkes); PE 256 (based on DCDC's April 1996 staff roster, only two medical staff members who provide direct care are bilingual); TR at 138–39 (Nunez testimony); TR at 167–68 (Sandoval testimony).
>
> Although protocols for providing translators for medical encounters have been introduced, they have not been effectively implemented. The majority of the medical staff were unaware of the protocols. *See, e.g.,* Fowlkes Test. at 9 & 16–17; TR at 304 & 311–12 (describing medical staff's failure to follow 1994 policy on providing interpreters during medical encounters) (redirect examination of Dr. Fowlkes); *id.* at 309–10 (describing medical staffs lack of awareness regarding identity of bilingual coordinators); Hall Dep. TR at 31 (un-

aware of protocol but some awareness of a list of Spanish-speaking personnel).

. . .

There is a chronic and pervasive misperception on the part of medical staff that inmates who barely speak English are capable of negotiating medical encounters in English. *See, e.g.,* Fowlkes Test. at 9; TR at 305–07 (testimony of Dr. Fowlkes); TR at 647–48 (testimony of Dr. Oquendo).

Hispanic inmates are not provided with an orientation to the correctional medical system at any of the DCDC facilities, and they are not informed adequately as to how they access the health care system. *See, e.g.,* Fowlkes Test. at 9.

The medical staff fails to coordinate the activity of Hispanic inmates seeking medical treatment, particularly specialty clinics to insure that translators are available when the patient presents for treatment. *See, e.g.,* Fowlkes Test. at 9; TR at 321 (testimony of Dr. Fowlkes).

Prisoners who are prescribed medication do not receive instructions regarding the administration of that medication or about the potential side effects in Spanish. *See, e.g.,* Fowlkes Test. at 9; TR at 108 (Lazo testimony); TR at 123 (Bonilla testimony); Direct Testimony of Dr. Oquendo ("Oquendo Test.") at 26–27; TR at 645 (Oquendo testimony).

*Franklin v. District of Columbia,* 960 F.Supp. 394, 408–09 (D.D.C.1997).

The panel relied heavily on the fact that the District does have a policy regarding interpreter assistance during medical encounters. *See Franklin,* 163 F.3d at 636. Yet the panel opinion never mentioned the district judge's findings that "the policy is one on paper only—it is seldom followed"; that "there is a great gulf between [the District's] official policy and actual practice"; that the District's policy "is honored in the breach"; and that the policy is "little more than window dressing." 960 F.Supp. at 405, 412, 430 & n. 75; *see also id.* at 406 (suggesting that defendant's "flurry of activity" in the weeks prior to trial was "nothing more than a weak attempt to shield its deliberate indifference from judicial scrutiny"). It is true that "imperfect enforcement of a policy

*alone* " does not necessarily establish deliberateness, *Scott v. District of Columbia,* 139 F.3d 940, 944 (D.C.Cir.1998) (emphasis added), but the district judge's findings in this case far exceed mere "imperfect enforcement." The panel opinion did not hold these findings clearly erroneous, nor did it discount their legal significance.

In concluding that the District had not acted with sufficient intent, the panel opinion found insufficient "obduracy" and "wantonness." *Franklin,* 163 F.3d at 636 (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Not only does that standard appear nowhere in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)—which postdated *Whitley* (an excessive force case) by eight years and in which the Supreme Court granted certiorari specifically to resolve circuit conflict regarding the mens rea element of the deliberate indifference standard—but the panel never mentioned the plethora of findings supporting the district judge's conclusion that the District *did* act with sufficient intent. Instead, it relied on *non-medical* programs, as well as last-minute actions taken by the District that the district judge expressly found to be no more than "[in]sincere" "window dressing." *Franklin,* 960 F.Supp. at 406, 430 n. 75.

Rehearing en banc should have been granted for a second reason: With respect to plaintiffs' due process claim, we believe this case should have been remanded rather than dismissed. While the panel correctly ruled that *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), recognized a liberty interest worthy of due process protection only if the change in a prisoner's situation as a result of the official action "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, *Sandin* did not intend to cover the entire terrain of liberty interests. Admittedly, some of the hearings involved here, housing and some forms of administrative segregation, would not meet the *Sandin* standard, as the panel rightly ruled. (We specifically left the applicability of *Sandin* to administrative segregation hearings open in *Brown v. Plaut,* 131

F.3d 163 (D.C.Cir.1997)). The panel did not, however, deal at all with the problem that some of these disciplinary hearings definitely implicate a prisoner's qualification for good time credits. *See* D.C.Code Ann. § 24–432 ("The award of good time credits for good behavior and faithful performance of duties may be forfeited ... [or] ... withheld ... after a hearing...."); D.C. Mun. Regs. tit. 28, § 505 (listing penalties for inmate infractions; Class I and Class II offenses provide for the "[f]orfeiture of all or part of earned good time"). And the Supreme Court has been quite clear that when that happens, a liberty interest worthy of due process protection is implicated. *See Wolff v. McDonnell,* 418 U.S. 539, 555–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). It is true that neither the plaintiffs nor the district court relied on the loss of good time credits for a cognizable liberty interest, but the trial record nonetheless supports such a recognition and the wealth of evidence and effort (by both the parties and the trial judge) already invested in this case merits a remand to insure that, at least, the due process rights of Spanish-speaking prisoners will be preserved in those disciplinary procedures affecting a prisoner's liberty interest in the deprivation of good time. Indeed, the trial judge made findings that the Spanish-speaking prisoners were not receiving necessary interpretive services at adjustment board (disciplinary) hearings (including, as we have pointed out here, those involving a potential loss of credits). *See Franklin v. District of Columbia,* 960 F.Supp. 394, 416–20 (D.D.C.1997). Unless that finding is found to be clearly erroneous, it should be sufficient to justify a remand to tailor the relief more narrowly to fit the liberty interests of the prisoners. Too much is at stake for these prisoners to be denied even that degree of relief.