# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 20-5368**

**September Term, 2021**

FILED ON: FEBRUARY 25, 2022

YASSIN MUHIDDIN AREF AND DANIEL MCGOWAN,
APPELLEES

KIFAH JAYYOUSI,
APPELLANT

v.

MERRICK B. GARLAND, ATTORNEY GENERAL OF THE UNITED STATES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00539)

Before: WILKINS and RAO, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*

## **J U D G M E N T**

This appeal from the United States District Court for the District of Columbia was presented to the Court, and briefed and argued by counsel. We fully considered the issues and determined that a published opinion is unnecessary. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the opinion of the district court be **VACATED**, and the case be **REMANDED** to the district court to dismiss as moot.

This case is before us after our remand to the district court for reconsideration of Kifah Jayyousi's due process claim. Jayyousi was a federal prisoner who spent several years in specially designated Communication Management Units (CMUs), where visitation and communications with the outside world were closely monitored. Jayyousi contends that his CMU designation violated his due process rights under the Fifth Amendment to the Constitution. He filed this action against the Federal Bureau of Prisons ("BOP") and other officials (collectively, Defendants) seeking, among other remedies, expungement of records relating to his time in the CMU. In 2015, the district court granted Defendants' summary judgment motion, finding that Jayyousi lacked a liberty interest sufficient to trigger due process protections. On appeal, this court ruled that federal

inmates have a liberty interest in avoiding CMU placement and remanded the case for the district court to decide whether Jayyousi received full due process. *Aref v. Lynch*, 833 F.3d 242, 247 (D.C. Cir. 2016). On remand, the district court concluded that Jayyousi obtained sufficient process and granted the Defendants' motion for summary judgment. Defendants now contend that Jayyousi's claims are moot because he has been released from BOP custody.

We agree with Defendants that Jayyousi's action for expungement of his CMU records became moot when he was released. Thus, we vacate the opinion of the district court and remand with instructions to dismiss as moot.

## I.

### A. Factual Background

In 2006 and 2008, respectively, the BOP established two CMUs in its facilities in Terre Haute, Indiana and Marion, Illinois. The CMUs were intended to address a deficiency in the Department of Justice's ability to monitor inmates with terrorism-related convictions and their communications. The CMUs are essentially "self-contained general population housing unit[s]" where inmates have "access to common areas for up to sixteen hours a day, recreational facilities, exercise equipment, and the library" and can "keep personal property in their cells, participate in religious services, receive educational and professional training, and be designated for work assignments." *Aref*, 833 F.3d at 247 (alteration in original). However, communications and contact between inmates in the CMUs and the outside world are extremely limited and closely monitored.

In 2008, Jayyousi was sentenced to 152 months' imprisonment for conspiracy to murder, kidnap, and maim in a foreign country and conspiracy to provide material support to terrorism. *See United States v. Jayyousi*, 657 F.3d 1085, 1091–92 (11th Cir. 2011). Jayyousi and his co-conspirators communicated in code and posed as a charitable organization to further these goals. *Id.* at 1099–1100. Although Jayyousi was originally classified as a "low security" prisoner, he was transferred to the Terre Haute CMU in June 2008. In October 2010, Jayyousi was sent to the Marion CMU. In March 2013, Jayyousi was transferred out of the CMU to Marion's general population. Jayyousi was released from BOP custody in September 2017 and is serving a twenty-year term of supervised release.

### B. Procedural History

On April 1, 2010, Jayyousi and other plaintiffs sued the BOP and associated officials, alleging several claims regarding their CMU placement. These included: "violation of their procedural due process rights due to inadequate notice and lack of opportunity to be heard; violation of their substantive due process and First Amendment rights to 'family integrity'; violation of the Eighth Amendment's prohibition on cruel and unusual punishment; retaliatory transfer into the CMU in violation of the First Amendment; and unlawful discrimination on the basis of religion in violation of the First and Fifth Amendments." *Aref*, 833 F.3d at 249 (citation omitted). The district court dismissed all but the procedural due process and First Amendment retaliation claims. *See Aref v.*

*Holder*, 774 F. Supp. 2d 147, 161–71 (D.D.C. 2011). In November 2012, Jayyousi and three other plaintiffs, Daniel McGowan, Royal Jones, and Yassin Aref, filed their Amended Complaint alleging violations of their procedural due process rights[1] and adding a retaliation claim against Defendants in their official capacities and against one BOP official in his individual capacity. Plaintiffs sought injunctive and declaratory relief. By 2014, the District Court had dismissed all Plaintiffs but Jayyousi and Aref from the case. *See Aref v. Holder*, 953 F. Supp. 2d 133, 142–44, 147–50 (D.D.C. 2013).

The parties moved for summary judgment. In 2015, the district court granted Defendants' motion, finding that Jayyousi and Aref lacked a due-process liberty interest and that Jayyousi's First Amendment rights were not violated. *See Aref v. Holder*, No. 10-cv-0539, 2015 WL 3749621, at *11 (D.D.C. Mar. 16, 2015). Plaintiffs appealed and we partially reversed, holding that federal prisoners "have a liberty interest in avoiding transfer into the CMU." *Aref*, 833 F.3d at 268. We instructed the district court "to determine whether the government's procedures comport with due process as applied to [Jayyousi and Aref]." *Id.* at 268–69.

Following remand, both Jayyousi and Aref were released from BOP custody. Defendants filed a motion to dismiss, contending that the procedural due process claims were moot. While that motion was pending, Aref was deported from the United States. For that reason, the district court granted Defendants' motion as to Aref, finding that his removal from the United States made his claims of future harm "simply too remote and speculative to maintain a live controversy." J.A. 1768. However, the district court denied Defendants' motion as to Jayyousi, concluding that he had alleged "sufficient ongoing consequences from the continued existence of the CMU-related documents such that his request for expungement constitutes a live controversy." J.A. 1767. With respect to the pending cross-motions for summary judgment, the district court concluded that the process Jayyousi received was constitutionally adequate. Jayyousi timely appeals that final judgment.

## II.

The court reviews *de novo* the district court's decisions on mootness and summary judgment. *Aref*, 833 F.3d at 250. "In doing so, we must 'view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence.'" *Id.* (citation omitted).

## III.

Defendants urge that Jayyousi's due process claim is moot given his release from BOP custody. Because "[t]he mootness doctrine ensures compliance with Article III's case and controversy

---

[1] Specifically, Plaintiffs challenged the BOP procedures relating to the initial designation of Plaintiffs to the CMUs as well as the BOP procedures regarding the periodic review of prisoners that allowed for potential redesignation and transfer out of the CMU. A more thorough discussion of the BOP procedures in effect at the time relevant to Jayyousi can be found in the court's opinion in *Aref*, 833 F.3d at 247–49.

requirement by 'limit[ing] federal courts to deciding actual, ongoing controversies,'" *Aref*, 833 F.3d at 250 (citation omitted) (second alteration in original), "mootness must be assessed at 'all stages' of the litigation to ensure a live controversy remains." *Id.* (citation omitted). A case is moot if the court's decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Id.* (internal quotation marks and citation omitted).

"Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison." *Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998). An exception exists when a prisoner, alleging "continuing adverse consequences from the challenged . . . records," seeks expungement of those records. *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998). A live controversy can exist provided a prisoner-plaintiff shows continuing adverse effects from the challenged records "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (emphasis removed) (quoting *Md. Cas. Co. v. Pac. Co.*, 312 U.S. 270, 273 (1941)). Otherwise, the claim is moot.

Here, the district court found a live controversy because Jayyousi alleged that the CMU-related records have continuing adverse effects. Jayyousi contended: that the CMU records contained inaccurate information that was highly prejudicial to him; that the CMU records are shared with outside government agencies; that he was interviewed by the FBI at least once since his release; and that these CMU records will impact his pending motion to modify his terms of supervised release.

We disagree. Jayyousi's assertion that he was interviewed by the FBI upon his release based on the CMU records is speculative. There is no reason to conclude that those records, and not the nature of his original, terrorism-related convictions, prompted the FBI interview. The CMU records note Jayyousi's good conduct while at the CMU, which is why he was transferred out of the CMU prior to his release from BOP custody. Even if the CMU records were shared with the FBI, the harm is still speculative given the nature of Jayyousi's original conviction and the detrimental information contained in his Presentence Investigation Report. *See Spencer v. Kemna*, 523 U.S. 1, 14 (1998) (concluding that the case was moot where plaintiff's sentence had expired and parole records sought to be expunged were "one factor, among many" that could adversely impact any future government action (internal quotation marks and citation omitted)).

Jayyousi also contends that the CMU records could impact his pending motion to modify the terms of his supervised release because a supervising court considers an inmate's behavior while in prison. Jayyousi asserts that an expungement order would ameliorate any harm caused by the information in the records. We are unconvinced. First, Jayyousi was the only party who mentioned his CMU records in the supervised release proceedings, undermining his reliance on this theory of potential injury. Second, as noted above, the notion that the CMU records would operate to Jayyousi's detriment is speculative. Moreover, even if the CMU records are considered during Jayyousi's supervised release proceedings, he will have an opportunity to respond and rebut any purportedly false information within the CMU records before the supervising court. Because Jayyousi has not demonstrated a concrete harm "of sufficient immediacy and reality" that can be

redressed by an expungement remedy, we dismiss Jayyousi's claim as moot. *See Preiser*, 422 U.S. at 402 (emphasis removed).

\* \* \*

This disposition is unpublished. *See* D.C. CIR. R. 36(d). We direct the Clerk to withhold the mandate until seven days after any timely petition for rehearing or rehearing *en banc* is resolved. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk