# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued April 18, 2006          Decided June 23, 2006

No. 05-5321

DENNIS R. WORTH,
APPELLANT

v.

ALPHONSO JACKSON,
SECRETARY, UNITED STATES DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT AND
CARI M. DOMINGUEZ, CHAIR, UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY COMMISSION,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 02cv01576)

---

*Michael E. Rosman* argued the cause and filed the briefs for appellant.

*Matthew M. Collette*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, and *Marleigh D. Dover*, Attorney.

Before: ROGERS, TATEL, and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Three inter-related judicial doctrines—standing, mootness, and ripeness—ensure that federal courts assert jurisdiction only over "Cases" and "Controversies." U.S. Const. art. III, § 2. In a rare justiciability hat trick, this case implicates all three. At issue is a white male employee's challenge to a government agency's affirmative action policy that allegedly deprives him of the opportunity to compete for job openings on an even playing field. The employee makes two claims, but we have jurisdiction over neither. The first relates to a written affirmative employment plan, the expiration of which has mooted his claim. The second involves a generalized challenge to unspecified agency "policies and practices"—a challenge that the employee lacks standing to bring and that, in any event, is unripe.

## I.

Appellant Dennis Worth, a white employee at the St. Louis office of the Department of Housing and Urban Development (HUD), has applied for at least four open positions within HUD over the past decade but claims he "has been unable to advance because of HUD's emphasis on meeting racial and gender employment targets." Second Am. Compl. 6. In this case, however, he challenges none of those rejections. Instead, alleging that he "intends to continue to apply for new positions and promotion within HUD," *id*., he filed suit in the U.S. District Court for the District of Columbia against HUD and the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964 and the Fifth Amendment to the Constitution seeking to enjoin the two agencies from "discriminating on the basis of race and gender," *id*. at 10.

Specifically, Worth alleges that EEOC uses its authority to enforce Title VII to "cajole[] and induce[] federal departments and agencies, such as HUD, to discriminate on the basis of race and gender in employment." *Id*. at 4. According to Worth, EEOC does so in part by requiring HUD and all other agencies to implement an "affirmative employment plan" (AEP) that, pursuant to EEOC's Equal Employment Opportunity Management Directive 714 (MD-714), "obligates all federal departments and agencies to . . . identify alleged instances of 'manifest imbalance' and 'conspicuous absence' of women and racial minorities, by gender and race, and establish 'goals' and 'target dates' in order to eliminate such alleged 'underrepresentation' at all organizational levels." *Id*. at 3-4. Because HUD's AEP, in alleged conformity to MD-714, "establishes certain racial and gender goals in employment," *id*. at 4, and because those goals, according to Worth, will adversely affect his prospects for advancement, he seeks to enjoin HUD's reliance on the plan, *id*. at 10. But Worth's challenge extends beyond the AEP. Alleging more generally that "[i]n its employment practices, HUD favors non-white racial groups over whites, and women over men," *id*. at 4, he also seeks an injunction barring HUD "from discriminating on the basis of race and gender in violation of the Fifth Amendment and [Title VII]," *id*. at 10.

The government moved to dismiss, arguing that Worth failed to allege any adverse employment action as required by Title VII. *See Brown v. Brody*, 199 F.3d 446, 452-55 (D.C. Cir. 1999) (requiring plaintiff to have suffered an adverse employment action to prevail in a Title VII suit). While that motion was pending, EEOC replaced MD-714 with MD-715. *See* Equal Employment Opportunity Management Directive 715, at i (Oct. 1, 2003) (MD-715). Differing markedly from MD-714, MD-715 declares that agencies have "an ongoing obligation to eliminate barriers that impede free and open

competition in the workplace and prevent individuals of *any* racial or national origin group or *either* sex from realizing their full potential." MD-715 at 8 (emphasis added). HUD's AEP expired immediately prior to MD-715's promulgation, and HUD declined to renew it given EEOC's new management directive.

On the government's motion, the district court found that any challenge to MD-714, HUD's AEP, or any policies based on either of those documents was moot. *Worth v. Jackson*, No. 02-1576 (D.D.C. Jan. 5, 2004) (order dismissing challenges to the AEP and MD-714); *Worth v. Jackson*, No. 02-1576 (D.D.C. Feb. 23, 2005) (order dismissing challenges to policies based on the AEP or MD-714). But finding that "some of HUD's hiring and promotion policies were not implemented pursuant to MD-714," the district court held that Worth's challenges to such policies could proceed. *Worth v. Jackson*, No. 02-1576, slip op. at 17 (D.D.C. Feb. 23, 2005).

With the mootness questions resolved, the government renewed its initial motion to dismiss. The district court, pointing out that Title VII is the sole avenue of redress for employment discrimination and finding that Worth failed to allege an adverse employment action sufficient to state a Title VII claim, dismissed the complaint in its entirety. *Worth v. Jackson*, No. 02-1576 (D.D.C. July 19, 2005).

Worth now appeals, making three broad arguments. First, urging us to reverse the district court's mootness determinations, Worth insists that all his claims remain viable. Second, he argues that because he alleged the existence of a constitutional injury, the lack of an adverse employment action is not fatal to his Title VII claim. And third, he argues that if Title VII "precludes any remedy at all for unconstitutional conduct," Appellant's Br. 43, the statute is unconstitutional as applied to him. For its part—and without addressing any jurisdictional

issue save mootness—the government insists the district court got it right on all fronts.

## II.

We begin, as always, with our jurisdiction, the constitutional boundaries of which we measure through the application of standing, mootness, and ripeness doctrines. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation marks and alterations in original omitted)). "All of the doctrines that cluster about Article III—not only standing but mootness [and] ripeness . . . —relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting *Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178-79 (D.C. Cir. 1983) (Bork, J., concurring)).

Significantly for our jurisdictional inquiry, Worth has disavowed any challenge to MD-715 or other written HUD or EEOC policies. *See Worth v. Jackson*, No. 02-1576, slip op. at 11 n.6 (D.D.C. Feb. 23, 2005) (noting Worth's concession that "he has not asserted any claims based on MD-715 and the [Federal Employment Opportunity Recruitment Program]"); Appellant's Br. 48 (explaining that references to written policies and memoranda in his complaint merely provide "evidence" supporting his claim "that HUD, with the EEOC's guidance and approval, adopted policies and practices that discriminated against white males on the basis of race and sex"). Despite some suggestions to the contrary, Worth's complaint asks for just two discrete forms of relief: (1) to stop HUD "from using

the AEP," and (2) to enjoin HUD and EEOC more generally "from discriminating on the basis of race and gender." Second Am. Compl. 10.  In considering our jurisdiction, therefore, we consider only those two remedial requests.

*Standing*

As an "irreducible constitutional minimum," a plaintiff seeking to demonstrate standing "must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  Moreover, that injury must be "fairly traceable" to the defendant's conduct and likely to be "redressed by a favorable decision."  *Id.* at 560-61 (internal quotation marks and alterations omitted).

Because Worth "had allegedly suffered an injury as a result of [HUD's] preferential treatment of minorities," the district court found he had suffered the requisite injury in fact. *Worth v. Jackson*, No. 02-1576, slip op. at 3 (D.D.C. July 19, 2005). We disagree.  While HUD's policies did allegedly injure Worth in the past, he seeks no relief for such injuries. *See* Appellant's Br. 38 (stating that "Worth [is] not seeking any backward-looking remedy for any of those instances of discrimination"). Instead, the basis for both his claims is that he "intends to apply for new positions and promotions at HUD on a regular basis in the future," Second Am. Compl. 2, and that, when he does, HUD will "violate [his] equal protection and civil rights," *id*. at 6; *see also* Appellant's Br. 41 ("Worth here seeks *only* forward-looking relief.").  For standing purposes, then, we limit our inquiry to determining whether that prospective injury qualifies as an injury in fact. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) ("If [the plaintiff] is to maintain its claim for forward-looking relief, our cases require it to allege

that the [federal government's] use of [race-conscious set-asides] in the future constitutes [an injury in fact]."); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

Worth's assertion that he "intends to apply for new positions and promotions at HUD on a regular basis in the future" is just the kind of speculative intention normally insufficient for standing purposes. In *Lujan v. Defenders of Wildlife*, for example, environmental plaintiffs claimed they would suffer aesthetic injuries when wild animals were killed in other countries because they "intended" to travel there and do some sight-seeing. The Court held that "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564; *see also Am. Library Ass'n v. FCC*, 401 F.3d 489, 496 (D.C. Cir. 2005) ("'[G]eneral averments,' 'conclusory allegations,' and 'speculative "some day" intentions' are inadequate to demonstrate injury in fact.").

But the Supreme Court has created an exception to this general rule for plaintiffs bringing facial challenges to race-conscious set-aside programs. In *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 658 (1993), the Court found that a group of contractors had standing to challenge a city ordinance establishing a minority set-aside program even though none of the contractors had actually bid for any contract. The Court reasoned that:

> [w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a

> benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit. And in the context of a challenge to a set-aside program, the "injury in fact" is the inability to compete on an equal footing in the bidding process, not the loss of a contract. To establish standing, therefore, a party challenging a set-aside program like Jacksonville's need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis.

*Id*. at 666 (internal citations omitted). In *Adarand Constructors, Inc. v. Pena*, the Court reaffirmed that contractors have standing to press facial challenges to race-conscious statutory regimes, at least so long as those contractors "ha[ve] made an adequate showing that sometime in the relatively near future [they] will bid on another Government contract." *Adarand*, 515 U.S. at 211. We see no basis for distinguishing between contractors and job applicants. Because job applicants, like contractors, must compete to obtain a benefit, they too have standing to challenge statutory set-aside programs. *Cf. Texas v. Lesage*, 528 U.S. 18, 21 (1999) (suggesting that applicants to graduate schools can prospectively challenge a public university's race-conscious policies).

No such statutory program is at issue here, however, since Worth challenges only internal agency policies. And neither *Northeastern Florida* nor *Adarand* resolves whether plaintiffs can bring facial challenges to agency employment policies not embodied in a statute. We nonetheless see no basis for thinking

the source of an agency's race-conscious policy—whether a statute, a regulation, or agency guidelines—controls the standing question. Emphasizing that imminence is "a somewhat elastic concept," 515 U.S. at 211 (quoting *Lujan*, 504 U.S. at 565 n.2), *Adarand* rests on the common-sense notion that when a contractor depends for its livelihood on competing for government contracts, and when the government has committed itself to doling out those contracts on a race-conscious basis, it stands to reason that the contractor will soon be competing on an uneven playing field. *See id*. at 212. Under *Adarand*, then, the relevant consideration is whether the agency is sufficiently committed to a particular race-conscious policy that the plaintiff will likely face a career impediment.

Given this common-sense approach, we have little doubt that Worth has standing to bring a facial challenge to HUD's AEP. Just as the statutes at issue in *Northeastern Florida* and *Adarand* committed the contracting agencies to favoring minority contractors, the AEP committed HUD to a race-conscious policy favoring minorities and women. Like the statutes, then, the AEP stood as "a barrier that makes it difficult for members of one group [white men] to obtain a benefit [positions at HUD] than it is for members of another group [minorities and women]." *Ne. Fla.*, 508 U.S. at 666. Moreover, *Adarand* instructs us to take seriously Worth's statement that "sometime in the relatively near future" he will apply for a job at HUD. *Adarand*, 515 U.S. at 211. Because of this, and because no one doubts that HUD will continue posting job openings, Worth's injury (competing on an uneven playing field) is sufficiently imminent for standing purposes. And because it is "fairly traceable" to HUD and eminently redressable, Worth has standing to challenge the AEP. To be sure, the AEP has now lapsed, but it was in place when Worth filed suit and "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed."

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989).

Whether Worth also has standing to challenge HUD's unwritten "policies and practices" is another story altogether. Worth challenges no statute, regulation, or written policy committing HUD to favoring minorities or women, resting his claim instead on speculation, untethered to any written directive, about how HUD is likely to make future employment decisions. But we have no way of knowing how or even whether HUD will continue taking race or gender into account, particularly given that the adoption of MD-715 has thrown HUD's hiring practices into some disarray. *See Worth v. Jackson*, No. 02-1576, slip op. at 11 n.8 (D.D.C. Jan. 5, 2004) (noting HUD's view that "the effect of MD-714's rescission on HUD's general employment policies will take some time to determine"). For that reason—and in contrast to the contractors in *Northeastern Florida* and *Adarand*, both of which faced almost-certain application of race-conscious statutes—Worth may never have to compete at a disadvantage for a new position. Thus, "[w]hile there is, of course, some chance that somewhere, at some time, [plaintiff] may again be exposed" to a prospective injury, "that possibility seems to us far too remote and attenuated to establish a case or controversy under Article III." *Branton v. FCC*, 993 F.2d 906, 909 (D.C. Cir. 1993).

As Worth notes, dismissing his claim on standing grounds creates an incongruity: plaintiffs will normally have standing to bring facial challenges to *de jure* employment policies but not *de facto* ones, even if those *de facto* policies are as unyielding as the *de jure* policies. This incongruity, however, reflects Article III's jurisdictional limitation to cases and controversies. A reviewing court can read a *de jure* policy and know with a high degree of certainty how the agency plans on tilting the playing field in favor of one race or gender. Because the likelihood of

the alleged harm coming to pass is quite high, the prospective injury is sufficiently imminent to give rise to a case or controversy even before the policy is applied. By contrast, in a facial challenge to a *de facto* policy, a court attempting to establish its jurisdiction has no way of satisfying itself that the alleged injury will ever actually occur. Perhaps the agency will abandon its race-conscious ways, or perhaps, having never committed to any general policy, it won't discriminate against that plaintiff. Whatever the agency chooses to do, there exists a healthy chance that it will never harm the plaintiff.

Because we resolve this claim on standing grounds, we need not address the district court's conclusion that Worth failed to allege an "adverse employment action" within the meaning of Title VII.

*Mootness*

Although Worth had standing to challenge HUD's AEP when he brought his suit, that policy has since expired, and the district court held that Worth's claim was moot. *See Worth v. Jackson*, No. 02-1576 (D.D.C. Jan. 5, 2004). Worth disagrees, observing that "'[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice'" except when the defendant meets its "'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" Appellant's Br. 46 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (alterations omitted)). Insisting that the AEP's expiration is precisely such a voluntary cessation, Worth argues that HUD has failed to meet its burden because it never demonstrated that "any future plan . . . would not retain the same flaws as [HUD's] earlier AEP." *Id*. at 50.

In making this argument, Worth loses sight of his claim. The "challenged practice" at issue here is HUD's reliance on the AEP that existed when Worth filed his complaint, and Worth nowhere disputes the district court's finding, supported by an unchallenged agency affidavit, that HUD "will not renew the AEP that was in effect when MD-714 was operative." *Worth v. Jackson*, No. 02-1576, slip op. at 11 (Jan. 5, 2004); Jackson Decl. at 2, Sept. 10, 2003 (stating that the AEP "will not be renewed or reissued"); *see also United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (finding in the mootness context that whether "the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary . . . is a matter for the trial judge"). That ends the matter. *See Burke v. Barnes*, 479 U.S. 361, 363-65 (1987) (holding that a statute's expiration mooted any challenge to the statute). To be sure, the Supreme Court has occasionally addressed challenges to laws no longer in force, but it has done so only when the statute or ordinance in question has been replaced by a substantially similar enactment, *see Ne. Fla.*, 508 U.S. at 662, or where the governing body expressed an intent to re-enact the allegedly defective law, *see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982). Neither condition exists here, particularly given that the advent of MD-715, with its apparent commitment to equal treatment for all, decreases the likelihood that any new AEP will resemble the now-defunct AEP. Because the Constitution nowhere licenses us to rule on the legality of an agency policy that no longer exists and that, according to the district court, will never again exist, Worth's challenge to HUD's AEP is moot.

*Ripeness*

Although the foregoing resolves this case, our conclusion that Worth lacks standing to challenge HUD's "policies and practices" rests, as we explained earlier, on our view that neither *Northeastern Florida* nor *Adarand* extends much beyond their

particular facts. *See supra* at p. 10. But even if this is wrong and the Supreme Court one day extends them to cover the kind of situation we face here, we would still lack jurisdiction to hear Worth's claim because it is unripe. In *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), the Supreme Court explained that the ripeness doctrine's

> basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Id*. at 148-49. To this end, the Court has repeatedly held that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). In considering ripeness, we must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149.

In our view, Worth's free-wheeling challenge to HUD's "policies and practices" is not yet ready for judicial airing. While Worth insists that HUD and EEOC "have adopted and maintain[ed] a system of race preferences that disadvantage Worth on their face," Appellant's Br. 37, we cannot assess a facial challenge to an unwritten policy that by definition has no face. Even assuming HUD will someday apply a discriminatory policy to Worth, absent concrete application of that policy, we lack "sufficient confidence in our powers of imagination" to ascertain its contours. *Texas*, 523 U.S. at 301. Far from presenting a "purely legal question[] . . . presumptively suitable

for judicial review," *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 92 (D.C. Cir. 1986), Worth's complaint asks us to resolve an "abstract disagreement[] over administrative policies" that have yet to be "formalized and . . . felt in a concrete way by the challenging part[y]." *Abbott Labs.*, 387 U.S. at 148-49. Because we "would benefit from postponing review until the policy in question has sufficiently 'crystallized' by taking on a more definite form," *see City of Houston v. HUD*, 24 F.3d 1421, 1431 (D.C. Cir. 1994), we would, even if Worth did have standing, put off review for another day.

Such a disposition might give us pause if it would burden Worth unduly, but he remains free to challenge HUD's use of racial or gender preferences should they ever actually affect him. He just needs to wait. By contrast, HUD would be significantly burdened if forced to shadowbox with litigants like Worth who, although pointing to no written policy or adverse action of any kind, attempt to enlist the judiciary in shaping agency policy. Disgruntled employees without concrete complaints could drag HUD—indeed, any agency—through months or years of intensive discovery in an effort to unearth elusive evidence of tacit agency policies and practices. Underscoring the burden this suit would impose on HUD, Worth admits he pleaded generalized claims for the very purpose of preventing HUD from interposing the plaintiff-specific defenses normally available in Title VII cases. *See* Appellant's Br. 40 (observing that an employer can "largely avoid liability by showing that it would not have hired plaintiff even if it had not discriminated[,] . . . lead[ing] toward the expenditure of a great deal of time and energy spent on this 'same decision' defense"). Such defenses are available for good reason, however, and Worth may not circumvent them merely by casting his complaint at a high level of generality.

## III.

Though Worth may one day have a live and perhaps even meritorious claim, that day has not yet come. We affirm in part, vacate in part, and remand with instructions to dismiss for lack of jurisdiction.

*So ordered.*