# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 17, 2018         Decided February 5, 2019

No. 17-5012

GORDON C. REID,
APPELLANT

v.

HUGH J. HURWITZ, ACTING DIRECTOR, FEDERAL BUREAU OF
PRISONS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00375)

*Caleb P. Redmond*, Student Counsel, argued the cause as *amicus curiae* in support of appellant. With him on the briefs were *Erica Hashimoto*, Director, and *Paola Pinto* and *Sean Stein*, Student Counsel.

*Daniel Schaefer*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GRIFFITH, WILKINS and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

2

Dissenting opinion filed by *Circuit Judge* KATSAS.

WILKINS, *Circuit Judge*: This case concerns whether the District Court properly dismissed based on mootness the claims of an incarcerated prisoner. Because the allegations in Gordon Reid's Complaint logically fall within a mootness exception for claims "capable of repetition, yet evading review," we reverse the decision of the District Court and remand the case for further proceedings.

I.

In reviewing the District Court's dismissal, we "accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (alteration and citation omitted). The facts recounted here come from the Complaint or undisputed submissions in the record. In 2008, the United States District Court for the District of New Hampshire sentenced Gordon Reid to incarceration for a term of 220 months, followed by three years of supervised release, for the crime of Interference with Commerce by Threats of Violence. Reid began serving that sentence on May 6, 2008, when he was delivered to the U.S. Penitentiary McCreary in Kentucky. *Id.* Sometimes for disciplinary reasons, and other times for administrative ones, Reid was housed repeatedly in Special Housing Units (SHUs) at McCreary and the other Bureau of Prisons (BOP) facilities, where he has continued serving his sentence.

Reid, proceeding *pro se*, filed a Complaint in the District Court for the District of Columbia on March 16, 2015.[1] At the time, Reid was incarcerated at the U.S. Penitentiary in Tucson,

---

[1] Reid's filing was styled a "Petition for Declaratory and Injunctive Relief." J.A. 6. The District Court construed it as a Complaint.

Arizona. He alleged that BOP had violated its own policies and procedures in three ways: (1) BOP had failed to deliver his magazine subscriptions while he was confined in SHUs, thus violating 28 C.F.R. § 540.71 and BOP Program Statement 5266.11 (Nov. 9, 2011); (2) BOP had deprived him of outside exercise while he was confined in SHUs, violating 28 C.F.R. § 541.31(g) and BOP Program Statement 5270.10 (Aug. 1, 2011); and (3) BOP deprived him of meaningful access to the administrative remedy procedures in violation of 28 C.F.R. § 542.10 and BOP Program Statement 1330.18 (Jan. 6, 2014). When questioned about these violations, Reid alleges BOP personnel "invariably" claimed that they were complying with "BOP Policy." J.A. 7-8. We liberally construe the *pro se* Complaint as asserting not only a broad challenge to a nationwide BOP policy or practice, but also a declaratory claim with respect to the individual deprivations Reid suffered in SHUs. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). The Complaint asked for declaratory, injunctive, and mandamus relief to remedy these alleged violations.

In total, Reid appears to have been transferred in and out of a SHU over twenty times from August 1, 2007, to July 19, 2016, under either administrative detention or disciplinary segregation status. This amounted to at least 764 days in a SHU, and some of those confinement periods postdated the filing of his Complaint in the District Court.

BOP filed a motion to dismiss or, in the alternative, for summary judgment, arguing that Reid's claims were moot. BOP argued that Reid was "no longer confined at USP Tucson, his place of confinement when he filed this civil action," or at any of the other facilities where the alleged violations occurred. Mot. to Dismiss at 15-16, No. 1:15-cv-375 (RMC) (D.D.C. filed Sept. 28, 2015), ECF No. 14. BOP concluded that Reid's "allegations concerning how staff at previous institutions

handled the processing of inmates' incoming magazines, how SHU staff allocated outside recreation time, or Unit Team's protocol for conducting rounds in SHU no longer present[ed] a case or controversy," and argued that the mootness exceptions did not apply. *Id.* at 16.

In response to BOP's motion, the District Court issued an order to "advise the *pro se* Plaintiff of his obligations" under the Rules, as well as the consequences for failing to follow them. Order at 1, 3, No. 1:15-cv-375 (RMC) (D.D.C. filed Oct. 1, 2015), ECF No. 15. The District Court informed Reid that he needed to file a response in opposition to the motion by November 30, 2015, and advised him of all relevant Federal Rules of Civil Procedure and local rules regarding opposition to motions to dismiss and for summary judgment. *Id.*

After initially granting BOP's motions because of Reid's failure to timely respond, the District Court accommodated Reid's late filing of a response opposing BOP's motions. *See* Order at 1-2, No. 1:15-cv-375 (RMC) (D.D.C. filed June 2, 2016), ECF No. 21. In his brief opposing dismissal and supporting his cross-motion for summary judgment, Reid argued that the case was not moot because he was challenging ongoing practices of BOP. Mot. to Vacate Judgment at 106, No. 1:15-cv-375 (RMC) (D.D.C. filed May 6, 2016), ECF No. 20. He also argued that the case was an exception to the mootness doctrine: "That these controversies are capable of repetition is a matter of historical fact rather than deduction for Plaintiff has, in fact, been repeatedly housed in SHU units across the country where, time and again," BOP had committed the same violations. *Id.* at 109.

The District Court ordered BOP to file an opposition to Reid's cross-motion for summary judgment, combined with BOP's opposition to Reid's motions to strike and reply in

support of its motion to dismiss. In its filing, BOP stated that "[n]ormally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in prison." Def.'s Opp'n to Pl's Cross Mot. for Summ. J. & Reply in Supp. of Def.'s Mot. to Dismiss (Def.'s Cross Opp'n & Reply) at 7, No. 1:15-cv-375 (RMC) (D.D.C. filed July 21, 2016), ECF No. 25; *see also Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998). BOP responded to Reid's argument that his claims were not moot due to changing circumstances by reiterating that Reid had since been transferred to another facility and out of the SHU. Def.'s Cross Opp'n & Reply 7-8. BOP argued that "with the exception of <u>one</u> night, [Reid] ha[d] not been confined in SHU at all since his transfer to USP Coleman." *Id.* at 8 (emphasis in original). BOP stated that Reid's claims were "linked exclusively to his confinement in the SHUs and therefore no longer present[ed] a 'live' controversy," as Reid was no longer confined in SHUs. *Id.* at 9. BOP also pointed out that Reid had not alleged continued violations since his (then) latest transfer. *Id.* In support, BOP attached an affidavit stating that Reid was no longer housed in a SHU and had been in the general population at the Coleman facility with the exception of one twelve-hour period. Decl. of An Tran at 1-5, No. 1:15-cv-375 (RMC) (D.D.C. filed July 21, 2016), ECF No. 25-1. BOP also attached inmate records with data it had not originally provided in support of its motion. *Id.* at 8-50.

The District Court instructed Reid that he could file a reply in support of his cross motion for summary judgment before August 29, 2016. Order at 2, No. 1:15-cv-375 (RMC) (D.D.C. filed June 2, 2016), ECF No. 21. On November 8, 2016 – over two months after the deadline for Reid's reply brief – the District Court issued an order granting BOP's motion to dismiss Reid's claims as moot and denying his cross motion for summary judgment. The District Court noted that Reid had

"asserted nothing" to contradict BOP's argument that "for the past straight year" Reid had not been "confined to the Special Housing Units that gave rise to his claims." *Reid*, 2016 WL 6602614, at *1. Thus, the District Court held:

> "Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison." And in the absence of "a cognizable cause of action," a plaintiff has "no basis upon which to seek declaratory relief."

*Id.* (citations omitted).

On appeal, Amicus for Reid[2] argues that the District Court did not meet its obligations for litigation involving a *pro se* plaintiff,[3] and that Reid's claims avoid mootness because they are capable of repetition, yet evading review or, alternatively, because the voluntary cessation doctrine applies.

## II.

We review *de novo* the District Court's dismissal for mootness. *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014). "Under Article III of the United States Constitution

---

[2] We thank Erica Hashimoto, Paola Pinto, Caleb P. Redmond, and Sean Stein for their work on this appeal.

[3] The District Court was very generous with Reid, giving him additional instructions and leeway with late filings. The District Court not only complied with, but also went above and beyond, our guidance for managing the docket of a *pro se* case. *See Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993); *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992).

we 'may only adjudicate actual, ongoing controversies.'" *District of Columbia v. Doe*, 611 F.3d 888, 894 (D.C. Cir. 2010) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). Under the mootness doctrine, we cannot decide a case if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (quotation marks omitted). The party seeking jurisdictional dismissal must establish mootness, while the opposing party has the burden to prove that a mootness exception applies. *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010).

The Supreme Court has carved out one such exception for claims that are "capable of repetition, yet evading review." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). "The exception applies when: '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Doe*, 611 F.3d at 894 (quoting *Jenkins v. Squillacote*, 935 F.2d 303, 307 (D.C. Cir. 1991)). At the motion to dismiss stage, courts assess justiciability based in part on "the theory of injury presented in the complaint" and "the facts alleged in support of the claim." *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987) (reversing district court's 12(b)(1) dismissal because the court "did not adequately assess whether the alleged policy pose[d] a realistic threat to [the plaintiff]"). Although *Haase* applies this framework to constitutional standing, not mootness, they are "related concepts" because both go to the plaintiff's injury. *Garden State Broad. Ltd. P'ship v. FCC*, 996 F.2d 386, 394 (D.C. Cir. 1993). If anything, the standing doctrine is stricter than the mootness doctrine. If the theory of justiciability is

"not itself inherently flawed, the [Article III] inquiry is ordinarily . . . complete." *Haase*, 835 F.2d at 907.

BOP urges us to hold Reid's factual allegations, which it finds "speculative," to a stricter standard, such as the plausibility standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). But it is impossible for a plaintiff, when she initially files a Complaint, to make plausible allegations supporting a mootness exception. The District Court focused not on the allegations Reid made in his Complaint, but rather on the legal theory of justiciability. The District Court dismissed the pleadings on the basis that Reid's transfer from the SHU rendered inapplicable the "capable of repetition, yet evading review" exception as a matter of law. Because we disagree and see no logical flaw in the theory of why the mootness exception may apply, we reverse the District Court's decision to dismiss the Complaint at the pleadings stage.[4]

*First*, Reid adequately alleges that the challenged action is too fleeting to be fully litigated. To address whether a claim evades review, we ask whether "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). In *Doe*, we noted that "there can be no doubt that a one-year placement order under the [Individuals with Disabilities Education Act] is, by its nature, too short in duration to be fully litigated prior to its expiration." 611 F.3d at 894-95. Based on the information provided by BOP, Reid's longest stay in a SHU was 120 days, and many of his other

---

[4] Although Amicus presents an argument in favor of applying the voluntary cessation doctrine under *Aref v. Lynch*, 833 F.3d 242 (D.C. Cir. 2016), this argument was not raised below and is thus forfeited. *See Keepseagle v. Vilsack*, 815 F.3d 28, 36 (D.C. Cir. 2016).

stays were for much shorter time periods. Amicus Br. 8-10, 33. We agree with Amicus that this short duration "evades even district court review, let alone review by this Court and the Supreme Court." *Id.* at 33. The short durations of Reid's SHU placements clearly meet the threshold.

*Second*, we see no logical deficiency in Reid's allegations that he reasonably expects to be subjected to the same challenged deprivations in the future. *See FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 463-64 (2007). As Amicus points out, Reid demonstrated that BOP had placed him in the SHU "in almost every facility that confined him for longer than twenty-eight days, including four instances of segregation *after* he filed his complaint." Amicus Br. 31.

On this point, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), is instructive. In *Olmstead*, the Supreme Court noted that a claim was not moot when the petitioners were "currently receiving treatment in community-based programs" because of "the multiple institutional placements [the petitioners] ha[d] experienced," making the claims capable of repetition, yet avoiding review. *Id.* at 594 n.6. Thus, even though the petitioners were no longer in an institutional placement, their claims avoided mootness due in part to the multiple times that they had experienced institutional placements in the past. Reid's circumstance is similar.

BOP recognizes that "[a] prisoner's transfer to another facility or unit will not moot a claim for equitable relief . . . if the very same policy, practice, or condition continues to apply to the same prisoner's confinement following his or her transfer to another unit or facility." Appellee's Br. 25 (citing *Scott*, 139 F.3d at 941). But, BOP contends, "[o]n this record, the chance that Reid would again be subjected to the three deprivations in

SHU that he challenged was entirely speculative." *Id.* at 26; *see id* at 36.

The BOP's argument ignores that Reid's complaint identifies not only single instances but also BOP's alleged policy or practice of violating its own regulations to the detriment of Reid. In particular, Reid has alleged three key facts. First, he has been housed at eight different SHUs since 2008. Second, he has suffered a uniform set of deprivations at each SHU that contradict BOP's written regulations. Third, each time he has suffered a deprivation, he alleges that BOP officials justify the deprivations based on "BOP policy." J.A. 7-8. Having been placed in a SHU in myriad different BOP institutions, subject each time to a restriction allegedly imposed under a purported BOP policy or practice contravening BOP regulations, Reid has proffered a logical theory that the challenged actions reasonably will recur despite his current transfer out of the SHU. *See, e.g.*, *Olmstead*, 527 U.S. at 594 n.6; *Doe v. Sullivan*, 938 F.2d 1370, 1378-79 (D.C. Cir. 1991).

## III.

Both the District Court and the government on appeal have failed to grapple with Reid's claim that he was repeatedly subjected to deprivations in the SHU due to an ongoing policy or practice of the BOP. Instead, the government argues that Reid is unlikely to be subjected to those conditions again because his past experience is insufficiently predictive of the likelihood of Reid returning to a SHU. *See* Appellee's Br. 39-42 ("Once the conditions of confinement that an inmate challenges cease completely at *some* point[,] an expectation of recurrence is no longer reasonable." (emphasis in original)).

In dismissing Reid's Complaint under Rule 12(b)(1), the District Court simply stated that, "[n]ormally, a prisoner's

transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison." Although this is "normally" true, it is not true when a prisoner alleges he has been subject to those conditions in multiple BOP facilities, along with an alleged policy or practice of violating regulations that would apply to Reid at any BOP facility in the future. The District Court erred by dismissing Reid's claims as moot when, as a logical matter, his pleadings as a whole are capable of repetition, yet evading review. *See Haase*, 835 F.2d at 907-08.

The District Court has multiple options on which to proceed on remand. The government filed various motions under Rule 12 and Rule 56, and it may renew its motions when this case returns to the District Court.

Although Reid has presented a sound legal theory for why his claims are not moot, the District Court may have concerns about "the facts alleged in support of" jurisdiction. *Id.* at 907. The District Court is free "at the motion to dismiss stage" to inquire into Reid's asserted facts in support of the mootness exception. *Id.* As a related but separate matter, the District Court may doubt Reid's standing to plead a broad-based attack on the alleged BOP policy or practice. A plaintiff challenging "an ongoing policy must . . . demonstrate both that 'the request for declaratory relief is ripe' and that [he has] 'standing to bring such a forward-looking challenge.'" *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1206 (D.C. Cir. 2013) (*quoting Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009)). We have not determined the minimal requirements for factual allegations rebutting a mootness challenge that the District Court considers at the motion to dismiss stage, but we have held that a plaintiff must plead facts plausibly demonstrating standing, *see, e.g.*, *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). If the

District Court harbors doubts, it may give Reid "the opportunity to plead additional facts" to support jurisdiction. *Haase*, 835 F.2d at 903; *see also Moore*, 994 F.2d at 877 ("[L]eave to amend is particularly appropriate when a plaintiff proceeds pro se.").

The District Court further may address the other Rule 12 motions.  In vacating the decision below, we do not pass judgment on whether Reid has plausibly stated policy and individual challenges that survive a Rule 12(b)(6) motion on the merits.  It is possible that, on remand, the District Court will hold that BOP's alleged conduct "stops short of the line between possibility and plausibility of entitlement to relief." *See Twombly*, 550 U.S. at 557 (quotation marks omitted).  But that is a different question than the one before us now.

The District Court also may wait until summary judgment to consider anew both Reid's standing to assert the policy and individual claims, as well as the BOP's mootness argument.

\*\*\*

The District Court erred in dismissing Reid's Complaint on the ground of mootness because it alleged a policy or practice of violations by the BOP.  Reid's theory for why his claims are not moot is logically sound.  *See Haase*, 835 F.2d at 907-08.  We reverse the decision of the District Court and remand the case for further proceedings.

*So ordered.*

KATSAS, *Circuit Judge*, dissenting: Gordon Reid alleges that the Federal Bureau of Prisons has adopted a nationwide policy to violate its own regulations regarding the treatment of prisoners. My colleagues reserve the question whether Reid has adequately alleged such a policy. Yet, in assessing mootness, they credit the allegation for now and then use it to transform specific past disputes—about Reid's treatment in prisons where he is no longer housed—into a unified, recurring controversy that may follow Reid from prison to prison.

Respectfully, I am unpersuaded. We should reject Reid's conclusory allegation that BOP has implemented unlawful nationwide policies. And without such unifying policies, the specific disputes alleged here are not capable of repetition. Therefore, I would affirm the dismissal of this case as moot.

I

In 2008, Reid was convicted of robbing a convenience store at gunpoint. During pretrial detention, "Reid quickly distinguished himself as a combative, disruptive, and violent inmate." *Reid v. Strafford Cty. Dep't of Corr.*, No. 06-CV-182, 2008 WL 163042, at *1 (D.N.H. Jan. 15, 2008). Since then, while incarcerated at various BOP facilities, Reid has amassed a disciplinary record that includes assault with a dangerous weapon, fighting and threatening other prisoners, throwing liquids on prison guards, indecent exposure, disobeying orders, and insolence. J.A. 20–30. Reid has often been placed in the Special Housing Unit (SHU) of various prisons, for either disciplinary or administrative reasons.

In March 2015, Reid filed a lawsuit arising from his treatment in the SHUs of prisons in Arizona, California, Indiana, Kentucky, Louisiana, North Carolina, Oklahoma, and Virginia. Reid alleged that he was denied magazines and exercise pursuant to informal BOP policy and that he was often denied prompt access to administrative complaint forms. Reid

claimed that these various deprivations violated BOP regulations and a formal policy statement. He sought declaratory and injunctive relief, but not damages.

After the complaint was filed, Reid was transferred to a prison in Florida and then to another prison in Pennsylvania. Reid has never sought to amend his complaint to add allegations about his treatment at either of those institutions.

The government moved to dismiss or for summary judgment on various grounds, including mootness. Reid cross-moved for summary judgment. In these motions, both parties introduced documents and affidavits detailing Reid's past treatment at BOP prisons.

The district court dismissed the case as moot. It invoked our precedents holding that an inmate's release or transfer from a prison normally moots prospective challenges to conditions at that prison. *See*, *e.g.*, *Scott v. District of Columbia*, 139 F.3d 940, 941 (D.C. Cir. 1998). This rule is merely one specific application of the general mootness principle: "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks omitted).

II

In support of Reid, a court-appointed amicus advances two distinct arguments to avoid mootness. One argument is that this case never became moot because Reid seeks to challenge not only specific past deprivations, but also an ongoing policy to inflict similar deprivations at all BOP prisons. Another argument is that this case falls within an exception to mootness

because the past deprivations involve controversies that are capable of repetition yet evading review.[1]

My colleagues credit the second argument, at least in the current procedural posture of this case, and they do not reach the first argument. I would reject both. I begin with the policy point because, as explained below, unless Reid can plead and prove that BOP has a nationwide policy to violate the regulations at issue in this case, he cannot show that his specific past disputes are capable of repetition.

## A

The complaint frames a challenge to ongoing policies. Reid alleges a "BOP policy" that "prisoners housed in SHU may not have magazines," in violation of a regulation providing that they may. J.A. 7. Likewise, Reid alleges a "BOP policy" to restrict inmates' exercise as punishment for minor infractions of prison rules, in violation of a written policy statement that "[r]estriction or denial of exercise is not used as punishment." J.A. 8–9. Finally, Reid alleges that, "[o]n many occasions," he was denied prompt access to forms for filing grievances. J.A. 9. Reid does not further describe these alleged policies. Yet his amicus contends that this case presents justiciable challenges to all of them.

## 1

If "the specific conduct that gave rise to the case has ceased," a plaintiff nonetheless may seek prospective relief "as to an ongoing policy" authorizing the conduct. *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C.

---

[1] Reid has forfeited any argument based on the voluntary-cessation exception to mootness. *Ante* at 8 n.4.

Cir. 2009). But the plaintiff must establish both that he "has standing to bring such a forward-looking challenge" and that "the [challenge] is ripe." *City of Houston v. HUD*, 24 F.3d 1421, 1429 (D.C. Cir. 1994). Standing requires an injury that is "concrete, particularized, and actual or imminent," among other things. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks omitted). Ripeness requires both an impending injury and an issue that is presently fit for judicial resolution. *See Texas v. United States*, 523 U.S. 296, 300–01 (1998). Without pleading and proving that an ongoing policy exists, the plaintiff cannot satisfy these basic requirements, and the prospective challenge likewise would fail on the merits.

Standing and ripeness must be "supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, on a motion to dismiss, the plaintiff must allege well-pleaded facts that support a plausible inference of standing and ripeness. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–84 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007). Confirming this point, we have held that the pleading requirements of *Twombly* and *Iqbal* apply to questions of standing. *See*, *e.g.*, *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016) (at the pleading stage, a plaintiff must "'state[ ] a plausible claim' that each element of standing is satisfied" (quoting *Iqbal*, 556 U.S. at 678–79)). Likewise, on summary judgment, the plaintiff must adduce sufficient evidence from which the trier of fact could reasonably find standing and ripeness. *See*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986).

Two aspects of *Twombly* and *Iqbal* are important here. First, courts do not accept as true a complaint's legal conclusions, "mere conclusory statements," or "[t]hreadbare

recitals of the elements" of a claim. *Iqbal*, 566 U.S. at 678. Included in these categories are naked assertions of unlawful motive, *see id.* at 680–82, or agreement, *see Twombly*, 550 U.S. at 551. Second, any specific factual allegations falling outside these categories must establish a "plausible" claim— something "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. For example, "parallel conduct does not suggest conspiracy" in antitrust cases, for it is fully consistent with independent action in competitive markets. *Twombly*, 550 U.S. at 557, 566–70. Likewise, the fact that "thousands of Arab Muslim men" were detained after the September 11 attacks was "no surprise" given the identities of the attackers, and thus did not support a plausible inference of unconstitutional discrimination. *Iqbal*, 556 U.S. at 681–82. In both instances, the allegations failed to negate an "obvious alternative explanation" besides unlawful conduct. *Id.* at 682 (quoting *Twombly*, 550 U.S. at 567).

2

Under these standards, Reid failed to plausibly allege any unlawful BOP policies. To begin, it is not enough merely to assert that unlawful policies exist, just as it was not enough merely to assert the existence of a conspiracy in *Twombly* or an illicit motive in *Iqbal*. Rather, the bare allegation of an unlawful policy is a legal conclusion or conclusory statement. *See, e.g.*, *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011). Even two decades before *Twombly*, this Court made clear that "more than a nebulous assertion of the existence of a 'policy' is required to establish standing." *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987). Thus, the allegation that Reid was denied magazines and exercise "per BOP policy," J.A. 7–8, is plainly insufficient. And the statement that Reid was denied prompt access to

administrative forms "[o]n many occasions," J.A. 9, is even less substantial, as it fails to allege a policy even in conclusory terms.

The complaint further alleges that prison officials "invariably informed" Reid that they were following BOP policies in denying him magazines and exercise. J.A. 7–8. Yet Reid says nothing more about who said so, when, where, how often, and under what circumstances. This too falls short, for *Twombly* and *Iqbal* require enough "specific facts" to "present a story that holds together." *McCauley*, 671 F.3d at 616 (quotation marks omitted). These vague references to hearsay statements tell no such story. If pleading "there is a policy" is not enough, then neither is pleading "I was invariably informed that there is a policy," which is all Reid has done here.

Nor do Reid's allegations about specific incidents support any plausible inference of a policy. As for magazines, the complaint alleges only that, at eight facilities, "prison officials refused to deliver magazines sent from the publisher to Petitioner." J.A. 7. Entirely unstated are the involved officials; the names, number, or types of the magazines; and the frequency or surrounding circumstances of any refusal to deliver. As for exercise, Reid alleges only denials for infractions "such as having a string hanging from the shower, a piece of paper in the window, not having his bed made to the satisfaction of the prison guard, or any other matter of cell decorum, whether real or imagined." J.A. 8. On its face, this suggests not a nationwide policy, but individual decisions based on the facts and circumstances surrounding different prisoners in different prisons at different times.

The relevant BOP regulations further undercut any inference of an illicit nationwide policy. They permit inmates to "receive softcover publications" such as magazines, 28

C.F.R. § 540.71(a)(1), but this privilege is limited in several respects. For one, a warden may reject publications deemed "detrimental to the security, good order, or discipline" of the prison, as well as publications that "might facilitate criminal activity." *Id.* § 540.71(b). A warden also "may set limits locally (for fire, sanitation or housekeeping reasons) on the number or volume of publications an inmate may receive or retain in his quarters." *Id.* § 540.71(f). Finally, a warden may restrict an inmate's incoming correspondence "based on misconduct or as a matter of classification." *Id.* § 540.15(a). The regulations further provide that a SHU inmate may receive five hours of outdoor exercise per week, *id.* § 541.31(g), and a BOP policy document states that "[r]estriction or denial of exercise is not used as punishment," BOP Program Statement 5270.11, at 12 (Nov. 23, 2016). But this privilege is also significantly limited, as the regulation further states that exercise may be denied "if it is determined that [the inmate's] use of exercise privileges threatens safety, security, and orderly operation of a correctional facility, or public safety." 28 C.F.R. § 541.31(g). Reid does not challenge any of these limitations.

Given the narrow, qualified nature of these regulatory privileges, a large number of deprivations does not plausibly suggest illegal nationwide policies. Any such inference would ignore an obvious alternative explanation—that the deprivations resulted from individual applications of the regulations to the circumstances of different prisoners in different prisons at different times. The regulations themselves require such contextual judgments, and Reid's allegations provide no basis to suspect anything more sinister.

3

Reid's thin allegations of amorphous policies also fail to establish ripeness. In *Worth v. Jackson*, 451 F.3d 854 (D.C.

Cir. 2006), we held unripe a prospective challenge to an alleged informal policy of using race and sex preferences in hiring. As we explained, "we cannot assess a facial challenge to an unwritten policy that by definition has no face." *Id.* at 862. We concluded that, absent "concrete application" of the policy, we could not "ascertain its contours." *Id.* In *City of Houston*, we likewise held unripe a prospective challenge to an alleged informal policy to deny hearings in vaguely specified categories of cases. 24 F.3d at 1431 ("There is simply no way for this court to consider whether HUD can act without a hearing in some amorphous category of 'cases such as this one,' because the actual contours of the cases within the category are potentially determinative of their outcome."). Here, Reid's complaint similarly alleges an unwritten policy that is uncertain in its scope and application.

On this point, the amicus invokes *Payne Enterprises v. United States*, 837 F.2d 486 (D.C. Cir. 1988), which adjudicated a prospective challenge to an Air Force policy of refusing to release bid abstracts for certain contracts. *Id.* at 488. But the policy there was written, its scope was undisputed, and its application in future cases did not depend on presently unknown facts. *See id.* at 491. None of that is true here.

4

The evidentiary submissions undercut Reid's policy claim even further. Both parties moved for summary judgment and, in so doing, introduced documents and affidavits detailing Reid's various disputes with BOP. Reid opposed the government's motion on the merits but did not argue that it was premature. Thus, pleadings aside, we could readily reject the alleged illegal policy on summary judgment.

The evidentiary materials confirm that Reid's past disputes with BOP have been localized and fact-intensive. To pick a

few examples: Documents indicate that in September 2013, officials at the Jonesville, Virginia prison withheld magazines from Reid because of security concerns about "inmates continuously covering their cell windows and light fixtures, which causes poor visibility into cells and interferes with staff duties." *Reid v. Samuels*, No. 15-CV-375 (D.D.C.), ECF Doc. 23, at 66. In January 2013, officials at the Atwater, California prison made a different, safety-related judgment—to withhold magazines from Reid because of concerns about sanitation and fire hazards. *See id.* at 18. By contrast, an official at the Tucson, Arizona prison where Reid was held from November 2013 to July 2015 testified that inmates there were "not denied access to their mail," and Reid had neither bought nor been sent any magazines. J.A. 49. The disputes about exercise were similarly varied: Atwater officials revoked Reid's privileges after he obstructed the light fixture in his cell. *Reid*, No. 15-CV-375, ECF Doc. 23, at 32. According to Reid, officials at other prisons did the same after he put "paper on the wall, light, sink, etc." J.A. 68. A Tucson official testified that Reid was not denied exercise but voluntarily refused it. J.A. 50.

To be sure, Reid disputes much of this evidence. For example, he argues that magazines should not have been "singled out" for removal in Jonesville because other objects could have been used to cover lights and windows. *Reid*, No. 15-CV-375, ECF Doc. 23, at 68. He claims that, while in Tucson, he was given a free subscription to "Z Magazine" and never refused exercise. J.A. 69–70. He contends that a cellmate obstructed the light in Atwater. *Reid*, No. 15-CV-375, ECF Doc. 23, at 34. Whatever the merits of these disputes, they turn on particular facts involving individual prisons and prisoners. Neither the disputes themselves, nor any other record evidence, suggest illegal nationwide policies.

10

B

Without any policy that could unify Reid's various individual disputes with BOP, this action cannot fit within the mootness exception for cases that are capable of repetition yet evading review. Under that doctrine, there must be a reasonable expectation that the same "legal controversy" between the same parties will reoccur. *See, e.g.*, *Del Monte*, 570 F.3d at 322–24. Only then can the doctrine be squared with "the Constitution's requirement, set forth in Article III, that courts resolve only continuing controversies between the parties." *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005) (*PETA*).

Our decisions confirm that, to be capable of repetition, a legal controversy must be fixed, knowable in advance, and thus predictably repeatable. For example, in *Del Monte*, we held that a dispute whether certain statutory deadlines were mandatory was capable of repetition. 570 F.3d at 324–35. Likewise, in *Christian Knights of the Ku Klux Klan v. District of Columbia*, 972 F.2d 365 (D.C. Cir. 1992), we held capable of repetition a dispute whether a permit to march along the National Mall could be restricted because of threatened audience violence. *Id.* at 371. By contrast, in *PETA*, we held that a past controversy, which arose from the exclusion of a sculpture from an exhibit, was too "fact-specific" to be capable of repetition. 396 F.3d at 424. The plaintiff alleged impermissible content discrimination in how the formal selection criteria had been applied in practice. *See id.* at 423. After summarizing the various factual disputes embedded in the controversy, we stated: "To conclude that a dispute like this would arise in the future requires us to imagine a sequence of coincidences too long to credit." *Id.* at 424.

*PETA* governs this case. Setting aside the deficient policy allegations, Reid does not challenge anything that could give rise to a discrete, predictably repeatable legal controversy. As explained above, he claims that BOP has violated regulations that require case-by-case inquiries into prison safety, security, order, discipline, sanitation, and housekeeping. Not surprisingly, the application of those regulations has spawned distinct, fact-intensive controversies. For example, the Jonesville dispute about the use of magazines as window covers is different from the Atwater dispute about sanitation and fire hazards, and both of those are different from the Tucson dispute about what magazines were mailed to Reid. Likewise, the Tucson dispute about whether Reid refused exercise is different from the Atwater dispute about which inmate obstructed the lights, and both of those are different from other disputes about whether Reid adequately maintained his cell. Because no discrete, identifiable legal controversy is capable of repetition, the mootness exception does not apply.

C

My colleagues reverse on narrow grounds, so my disagreement with them is also narrow. They reserve the question whether Reid has adequately pleaded a policy under the plausibility standard articulated in *Twombly* and *Iqbal*. *Ante* at 11. Likewise, they reserve the question whether Reid's policy allegations could survive a motion for summary judgment. *Ante* at 12. I would have decided those questions, but they remain open on remand.

The disagreement about how to apply the mootness exception for cases that are capable of repetition yet evading review is also narrow. My colleagues do not dispute two critical points: the legal controversy itself must be predictably repeatable, and Reid's claim to satisfy this requirement

depends on his policy allegations. My colleagues invite the district court on remand to probe the facts relevant to mootness—including the policy allegations—either on a motion to dismiss or on summary judgment. *Ante* at 11–12. So, the mootness question also remains open.

Ultimately, my colleagues and I disagree over how to apply the mootness exception in the current procedural posture of this case, which they describe as one involving a "motion to dismiss the Complaint at the pleadings stage." *Ante* at 8. My colleagues recognize that the party opposing mootness bears the burden of proving that the exception applies. *Ante* at 7. But they note that a complaint, which is filed before the alleged mooting event, obviously cannot plead a mootness exception. *Ante* at 8. So, they conclude, we should consider only whether there is any "logical deficiency" in the plaintiff's argument for satisfying the exception. *Ante* at 9–11. They derive this forgiving standard from a statement in *Haase* that "[a]ssuming the theory presented in the complaint is not itself inherently flawed, the standing inquiry is ordinarily now complete." 835 F.2d at 907; *see ante* at 7.

This analysis seems to me mistaken. For one thing, *Haase* was a case about initial standing, so it has nothing to say about how courts should assess intervening facts bearing on mootness. Its inquiry whether the plaintiff's theory is "inherently flawed" reflects not a distinction between standing and mootness, but a general premise that motions to dismiss do not test for pleading sufficiency. That premise was correct when *Haase* was decided in 1987, *see Conley v. Gibson*, 355 U.S. 41 (1957), but it did not survive *Twombly* and *Iqbal*.

In this case, the complaint alleges illicit policies that pre-date the mooting event of Reid's prison transfer, so there is nothing unfair about assessing whether those allegations were

plausibly pleaded. And, if intervening factual developments had strengthened Reid's case, he could have sought leave to amend the complaint, which he did not. Finally, the record includes not only the government's motion to dismiss, but also the parties' cross-motions for summary judgment, which amply develop the facts relevant to mootness. As noted above, Reid has never claimed that the government's motion was premature. So, I can see no reason to apply only a minimal screen for "logical deficiency" at this juncture, thereby artificially prolonging the life of this moot case.

Because nothing prevents us from resolving the question of mootness now, I would affirm the district court's order dismissing this case as moot.